AMERICAN FAMILY MUTUAL INSUR-
ANCE COMPANY, Appellant
(Defendant Below),

Louis H. Englert and Dorothy C. Englert
(Defendants Below),

v.

Eldred L. KIVELA and Betty Kivela, Wes-
ley M. Hurlbert and Shirley Hurlbert,
Appellees (Plaintiffs Below).

No. 1–1279A342.

Court of Appeals of Indiana,
First District.

Aug. 12, 1980.

Rehearing Denied Sept. 24, 1980.

George Montgomery, Bamberger, Foreman, Oswald & Hahn, Evansville, for appellant.

Cox & Thom, Jasper, for defendants.

David Clark, Clark, Statham, McCray, Clark & Thomas, Evansville, for appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

This cause is before the court upon the granting of the plaintiffs-appellees' motion for summary judgment in a garnishment action in proceedings supplemental to execution against the defendant-appellant American Family Mutual Insurance Company (American Family) wherein judgment was entered in the amount of $20,000 plus interest.

We affirm the action of the trial court in entering summary judgment in favor of the plaintiffs.

## STATEMENT OF THE FACTS

On August 9, 1967, Dorothy Englert applied for a policy of automobile liability insurance with American Family through its agent Marvin L. Boeglin. An application form was completed and a policy was issued, the coverage effective August 9, 1967, through February 9, 1968.

By a letter dated September 1, 1967, American Family notified Mrs. Englert that the policy would be cancelled effective September 16, 1967, *due to her husband's driving record.* On September 2, 1967, Mrs. Englert's husband, Louis, was involved in a head-on collision while he was driving the insured car, resulting in injuries to plaintiffs Eldred Kivela and Wesley W. Hurlbert, the occupants of the car with which Louis Englert collided. Mrs. Englert notified American Family's agent Boeglin of the accident on September 5, 1967. On September 22, 1967, American Family wrote to Mrs. Englert informing her that due to misrepresentations in her application for the policy of insurance, her coverage terminated at 12:01 a. m. on August 9, 1967, the day of the policy's inception. American Family wrote again to Mrs. Englert on October 13, 1967. In this letter, American Family specified those representations that its investigation discovered to be false, told Mrs. Englert that the policy would never have been written had the application been properly filled out, and advised Mrs. Englert that since her policy was "cancelled

flat" as of August 9, 1967, the insurer would not assume any responsibility for Louis Englert's accident of September 2, 1967.

American Family considers the following representations on the application for the policy of insurance to have been false and fraudulent:

1. That Mrs. Englert would be driving the insured car 100 percent of the time;

2. That neither she nor any other driver had ever had an automobile insurance policy cancelled or revoked;

3. That her car was not driven by anyone without a driver's license;

4. That neither her driver's license nor that of any other driver had ever been revoked, suspended or restricted;

5. That neither she nor any other driver had ever been "ticketed" or arrested for a moving motor vehicle violation; and

6. That neither she nor any other driver had ever been involved in any accident within the five years preceding the date of the application.

In July of 1969, the plaintiffs instituted a diversity action against the Englerts in the United States District Court for the Eastern District of Michigan, alleging essentially the negligent operation of a motor vehicle on the part of Louis Englert and the negligent entrustment of a motor vehicle on the part of Dorothy Englert. This cause of action was never brought to trial, due to a consent judgment entered in favor of the plaintiffs Hurlbert in the amount of $10,000 and a consent judgment entered in favor of the plaintiffs Kivela in the amount of $10,-000 (hereinafter, the Michigan judgments). On November 20, 1972, the Englerts entered into an agreement with the plaintiffs which states in pertinent part the following:

"HOLD HARMLESS AGREEMENT

IT IS HEREBY AGREED by plaintiffs, WESLEY W. HURLBERT and SHIRLEY HURLBERT, his wife, and ELDRED L. KIVELA and BETTY KIVELA, his wife, that the Consent Judgment entered into by the defendants, LOUIS H. ENGLERT and DOROTHY ENGLERT, on behalf of the plaintiffs in the amount of Ten Thousand Dollars ($10,000.00) in favor of WESLEY W. HURLBERT and SHIRLEY HURLBERT, his wife, and Ten Thousand Dollars ($10,000.00) in favor of ELDRED L. KIVELA and BETTY KIVELA, his wife, shall be satisfied only from the proceeds of any policy of insurance that plaintiffs might be successful in securing and that no attempts to satisfy such judgments from the individual assets of the defendants shall be made;

IT IS FURTHER HEREBY AGREED AND UNDERSTOOD by the plaintiffs and defendants, that should the consent judgments be set aside, this Hold Harmless Agreement shall be null and void and of no consequence and plaintiffs are free to pursue any and all legal remedies available to them."

The present action was initiated on February 28, 1974, in the Dubois Circuit Court. In their complaint therein, the plaintiffs alleged that their respective judgments against the Englerts obtained in the federal district court in Michigan were due and unpaid, and prayed for a judgment in the aggregate amount of $20,000. In answer, the Englerts asserted the "Hold Harmless Agreement", *supra*, and further filed a motion to dismiss, a motion for judgment on the pleadings, and a motion for summary judgment, all based on that agreement.

On June 26, 1974, the parties filed with the Dubois Circuit Court a second agreement, which reads as follows:

"It is hereby agreed by plaintiffs, Eldred L. Kivela and Betty Kivela, and Wesley W. Hurlbert and Shirley Hurlbert, defendants, Louis H. Englert and Dorothy C. Englert, and the Michigan Mutual Liability Company:

1. That any judgment that might be entered in any cause of action against the defendants shall be satisfied only from

the proceeds of a policy of liability insurance issued to the defendants by American Family Mutual Insurance Company, Policy No. 13–032891, and that no proceedings to enforce said judgment shall be filed except those that are necessary to secure said proceeds;

2. That the defendants will withdraw their Motion for Judgment on the Pleadings, Motion to Dismiss and Motion for Summary Judgment, which motions are presently Pending before this Court, and that the defendants will not assert in any manner as a defense to the above-set-forth cause of action a certain Hold Harmless Agreement, a copy of which is attached to said motions and designated as Exhibit 'A';

3. That this agreement is irrevocable and binding upon all parties to said agreement, their heirs, assigns, successors in interest, personal representatives, administrators, and/or executors."

Defendant's motions were so withdrawn.

On September 27, 1974, the plaintiffs filed a motion for summary judgment, which was granted on October 11, 1974, in the amounts of the Michigan judgments. On October 18, 1974, the plaintiffs filed an application for order in proceedings supplemental, citing the judgment of October 11, 1974 asserting that execution was issued thereon and returned unsatisfied, and alleging that the defendant American Family is indebted to the Englerts by virtue of the automobile liability insurance policy. Further, the plaintiffs alleged that this indebtedness is subject to execution and moved the court for an order requiring the defendants Englerts and American Family to appear and answer concerning the indebtedness and to show cause why the indebtedness should not be applied to the judgments.

On July 16, 1977, American Family filed a motion for summary judgment, asserting in substance that inasmuch as the insurance policy was properly voided *ab initio* due to the misrepresentations in the policy application, it was not liable on the judgments. Further, American Family asserted that un-

der the terms of the policy, it was only obligated to pay on the behalf of the insured such sums as the insured was "legally obligated to pay." Since the agreements between plaintiffs and the Englerts insulated the Englerts against execution on the judgments, the argument goes, the Englerts were not "legally obligated to pay" and, therefore, American Family incurred no liability.

On January 30, 1978, the plaintiffs filed their motion for summary judgment asserting that American Family had waived any rights to void the policy *ab initio* by its letter of September 1, 1967, prospectively cancelling the policy. Further, plaintiffs asserted that the agreements between plaintiffs and the Englerts did not operate to relieve American Family of liability on the judgments entered against its insured.

On December 5, 1978, the trial court granted plaintiff's motion for summary judgment and denied American Family's motion for summary judgment. Judgment against American Family was entered on July 11, 1979, in the amounts of $10,000 for the plaintiffs Kivela and $10,000 for the plaintiffs Hurlbert, plus interest from October 11, 1974. This appeal follows.

Pertinent provisions of the policy of automobile insurance are as follows:

"LIABILITY COVERAGE

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage arising out of the ownership, maintenance or use of an owned automobile or the use of a non-owned automobile. . . .

\* \* \* \* \* \*

PERSONS INSURED

1. The following are insured under the Liability Coverage:

a. With respect to an owned automobile,

(1) The named insured. . . .

\* \* \* \* \* \*

DEFINITIONS UNDER PART I:

'named insured' means the individual or husband and wife named as such in the declaration, but if only one individual is named, the term 'named insured' also includes his spouse if a resident of the same household;

\* \* \* \* \* \*

10. Cancellation

. . . This policy may be cancelled by the company by mailing to the insured named as such in the declarations at the address shown in this policy written notice stating when not less than 10 days thereafter such cancellation shall be effective. . . . The time or surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. . . ."

## ISSUES

American Family presents three issues for review, which we will consider in the following order:

I. Whether plaintiffs' motion for summary judgment was improperly granted, since American Family properly avoided the insurance policy *ab initio* due to misrepresentations on the application for insurance.

II. Whether plaintiffs' motion for summary judgment was improperly granted, since the insurance policy provided that the insurer should pay only such sums as the insureds were legally obligated to pay, but the insureds were not legally obligated to pay the judgments by virtue of a covenant not to execute.

III. Whether American Family's motion for summary judgment was improperly overruled.

## DISCUSSION AND DECISION

 The standard by which we review the grant of a summary judgment is well established. A summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

ty is entitled to a judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C). In determining whether a material issue of fact exists, the facts alleged by the party opposing the motion must be taken as true, and all doubts must be resolved against the proponent of the motion. *Crase v. Highland Village Value Plus Pharmacy*, (1978) Ind.App., 374 N.E.2d 58; *St. Joseph Bank and Trust Company v. Wackenhut Corporation*, (1976) Ind.App., 352 N.E.2d 842; *Mayhew v. Deister*, (1969) 144 Ind. App. 111, 244 N.E.2d 448. Even if the facts are undisputed, all reasonable inferences must be resolved against the moving party. *St. Joseph Bank and Trust Company, supra.* Only if from this viewpoint there is no genuine issue as to any material fact may the summary judgment be sustained. *Kleen Leen, Inc. v. Mylcraine*, (1977) Ind. App., 369 N.E.2d 638; *Mayhew, supra.* The burden is upon the proponent of the motion to demonstrate the absence of any material fact and that the law has been properly applied. *Levy Company v. Board of Tax Commissioners*, (1977) Ind.App., 365 N.E.2d 796; *Swanson v. Shroat*, (1976) Ind.App., 345 N.E.2d 872. A fact is material if it tends to facilitate resolution of any of the issues for or against the party having the burden of proof on the issue. The factual issue is genuine if it cannot be completely resolved by reference to the undisputed facts. *Stuteville v. Downing*, (1979) Ind. App., 391 N.E.2d 629.

*Issue I.*

We initially consider whether the trial court properly found American Family to have waived its right to void the policy *ab initio*. With regard to this issue the trial court entered the following finding:

"AMERICAN FAMILY waived any rights it may have had to avoid the contract from inception by its letter of September 1, 1967. The Court finds that AMERICAN FAMILY had knowledge of the matters which it has since raised in an attempt to establish fraud on the part of DOROTHY ENGLERT, prior to September 1, 1967. Whether fraud was in fact established is not a consequence as

AMERICAN FAMILY waived such letter (sic) of September 1, 1967. Therefore, the Court finds that on September 2, 1967, AMERICAN FAMILY insured the ENGLERTS pursuant to its policy number 13–032891."

American Family argues that a genuine issue of material fact exists as to the extent of its knowledge on September 1, 1967, concerning the falsity of certain representations made by Mrs. Englert in her application for the policy. American Family states that on September 1, 1967, it had knowledge that Mr. Englert had a poor driving record and that he was a potential driver of the insured car. It was upon this knowledge that American Family chose to cancel the policy prospectively, effective September 16, 1967.

In fact, the driving records submitted by American Family reveal that Mr. Englert had received several citations for traffic violations, some of which resulted in suspensions of his driving privileges, and he had been involved in several accidents. American Family, in its brief, cites many more violations and suspensions which occurred after August 9, 1967, the date of the submission of the application for insurance; we do not see any relevance whatever in these later facts. American Family has demonstrated that there are several representations on the application which are arguably false. In accordance with the appropriate standard of review we apply in summary judgment cases, we must resolve any doubt in favor of American Family as the party opposing the motion, and accept its contention that there were possible misrepresentations on the application that were material to the risk undertaken by American Family. However, this fact is not dispositive, for the reasons which follow.

■ An insurance contract is not rendered absolutely void by reason of false answers to questions contained in the application which materially affect the risk undertaken by the insurer, but in such a case, the contract is voidable at the election of the insurer. *Indiana Insurance Company v. Knoll*, (1968) 142 Ind.App. 506, 236 N.E.2d

63; *Prentiss v. Mutual Benefit Health & Accident Association*, (7th Cir. 1940) 109 F.2d 1, cert. denied 310 U.S. 636, 60 S.Ct. 1079, 84 L.Ed. 1405; *Commercial Life Insurance Company v. Schroyer*, (1911) 176 Ind. 654, 95 N.E. 1004. A representation is material if the fact or facts represented reasonably enter into and influence the insurer's decision whether to issue the policy or to charge a higher premium. *Brunnemer, Administratrix v. Metropolitan Insurance Company*, (1938) 213 Ind. 650, 14 N.E.2d 97; J. Appleman, Insurance Law and Practice, Vol. 12, § 7273, at 377; 45 C.J.S. *Insurance* § 473(3). Whether a misrepresentation is material is normally a question of fact for the finder, unless the evidence is such that there can be no reasonable difference of opinion. *Prudential Insurance Company of America v. Winans*, (1975) 263 Ind. 111, 325 N.E.2d 204. If representations in an application for insurance are false and material the policy may be vitiated, unless the company has in some way waived the benefit of it by its conduct and with knowledge of the facts. *Metropolitan Life Insurance Company v. Head*, (1927) 86 Ind.App. 326, 157 N.E. 448.

There can be no doubt that the representations made on the application concerning the driving histories of Mr. and Mrs. Englert were material to the risk undertaken by American Family, and on this question we feel that reasonable minds could not differ. There is, therefore, no genuine issue concerning this fact.

■ American Family urges that a genuine issue is present concerning the extent of its knowledge of Mr. Englert's driving record on September 1, 1967, when it wrote to Mrs. Englert informing her of its determination to prospectively cancel her policy. In that letter, American Family stated that it felt that the inclusion of Mrs. Englert among its group of policyholders was unfair to the other policyholders because she "was more likely to have losses" than the other members of the group. American Family told Mrs. Englert that it reached this conclusion "based upon the Motor Vehicle Driving Record of your husband, Louis." Amer-

ican Family now asserts that as of September 1, 1967, it was aware only that Mr. Englert had a poor driving record and was a *potential* driver of the insured car, and was not aware that Mr. Englert was an *actual* driver until after the accident was reported. The trial court, however, found essentially that by allowing the coverage to remain effective through September 16, 1967, with knowledge of Mr. Englert's driving record, American Family waived its right to avoid the policy *ab initio.* We affirm the trial court's ruling, and hold that while there may have been some question as to American Family's knowledge of the extent of the misrepresentations, there is no genuine issue with respect to the fact that the insurer did have sufficient knowledge to recognize the increased risk and cancel the policy prospectively on the basis of such knowledge.

 It has long been the law that a distinct act of affirmance of a contract of insurance, made with knowledge of facts which would create grounds for avoidance, constitutes a waiver of the right to avoid the contract. *Masonic Mutual Benefit Association v. Beck,* (1881) 77 Ind. 203, 40 Am.Rep. 295; *Western and Southern Life Insurance Company v. Ross,* (1930) 91 Ind. App. 552, 171 N.E. 212; *See* 16 I.L.E. *Insurance* § 270. In the case at bar, American Family had notice of facts which would have been grounds for avoiding the policy on September 1, 1967, yet elected to cancel the policy prospectively and provide coverage through September 16, 1967. American Family thereby waived its right to avoid the policy *ab initio,* and the policy was in effect on September 2, 1967, the day of the accident.

*Issue II.*

The trial court entered the following finding:

"The hold harmless agreement has been set up as a defense by AMERICAN FAMILY since the policy provides for payment on behalf of the insured 'all sums which the insured shall become legally obligated to pay . . .' The Court finds that AMERICAN FAMILY cannot complain that the Englerts took steps necessary to insulate themselves against personal liability. After being deserted by AMERICAN FAMILY the ENGLERTS were in essence left to find [sic] for themselves. Without the hold harmless agreement and the consent judgments it is entirely possible jury verdicts in the Michigan Federal Court might well have exceeded the Ten Thousand Dollar ($10,000.00) judgments. . . ."

American Family contends that the agreements entered into between plaintiffs and the Englerts do not create a legal obligation to pay on the part of Mrs. Englert and do not, therefore, create a liability against American Family under the terms of the policy. Those agreements, which we have included in the body of this opinion, *supra,* limited the plaintiffs to funds obtainable from the insurance policy as the sole source from which they could satisfy the judgments obtained against the Englerts. The applicable provision of the insurance policy contains the following language:

"[American Family agrees] to pay on behalf of the insured *all sums which the insured shall become legally obligated to pay* as damages because of bodily injury or property damage arising out of the ownership, maintenance, or use of an owned automobile." (Our emphasis.)

Since plaintiffs and the Englerts agreed that the plaintiffs would not pursue the individual assets of the Englerts in satisfaction of their judgments, American Family urges that the Englerts were not "legally obligated to pay" any sum and, consequently, American Family has no obligation under the policy to pay the judgments. At first blush, the logic of this position is enticing.

We find no Indiana cases which have construed the type of agreement here under consideration. As the parties have alerted us, there is a division of authority among the jurisdictions as to the effect of such agreements upon the insurer's liability.

American Family has directed us to several cases supporting its position. In *Stubblefield v. St. Paul Fire & Marine Insurance Company*, (1973) 267 Or. 397, 517 P.2d 262, the insurer refused to defend its insured in plaintiff's suit against him for alienation of affections and criminal conversation. Plaintiff settled with the insured, and a judgment of $50,000 was entered against the latter, but with a prior "covenant not to execute" against the insured for any amount in excess of $5,000. The insured also executed an "assignment" to plaintiff of all sums in excess of $5,000 due to him and all claims in excess of that amount against the insurance company arising out of the insurance policy issued by it to its insured.

After considering whether the particular acts alleged to have been committed by the insured were within the scope of the policy, the court considered whether the terms of the assignment were such as to give the plaintiff any rights against the insurer. The court concluded that since the terms of the policy obligated the insurer to pay such sums as the insured was "legally obligated to pay," and since the insured, by the terms of the assignment, was "legally obligated" to pay only $5,000, the plaintiff acquired no rights enforceable against the insurer.

Likewise, in *Huffman v. Peerless Insurance Company*, (1973) 17 N.C.App. 292, 193 S.E.2d 773, in considering a similar consent judgment and agreement, the court concluded: "Obviously, under the terms of the consent judgment, [the insureds] were not legally obligated to pay damages to plaintiff. The case of *Coblentz v. American Surety Company of New York*, (5th Cir. 1969) 416 F.2d 1059, cited and relied upon by appellant [plaintiff] is not controlling in this jurisdiction.

And, in *Dennis v. New Amsterdam Casualty Company*, (1970) 216 Pa.Super. 320, 264 A.2d 436, in a consideration "secondary and minor" to the case, the plaintiff-insured, under the settlement agreement executed with the third party, was held not obligated to pay the judgment entered against him, but only to institute suit against the insurer on the policy of insurance.

As we have noted, other jurisdictions have adopted a position contrary to the position taken in the cases relied upon by American Family.

In *Metcalf v. Hartford Accident & Indemnity Company*, (1964) 176 Neb. 468, 126 N.W.2d 471, the defendant insurer raised an argument identical to the one here under consideration, based upon an agreement between the injured third party and the insured, the insured consenting to judgment and the third party agreeing not to attempt collection from any assets of the insured other than any insurance policies under which he was covered. The critical portion of the policy was likewise identical to the policy in the case at bar.

The Supreme Court of Nebraska rejected the insurer's contention, stating the following:

"The defendant is obligated under its insurance policy to defend the suit brought against Holder, an additional insured. This it refused to do. Holder was thereupon required to engage an attorney and provide his own defense. With the insurance company denying liability, Holder was entitled to use all reasonable means of avoiding personal liability. It was to his personal interest to consent to the $4,500 judgment and accept an agreement from the plaintiff not to execute on his property other than any rights to indemnity he might have in the designated insurance policies. The matter is of no consequence to defendant if its claim of nonliability is correct. Since its claim of nonliability has no validity, and it having declined to defend the action when called upon to do so, the defendant is in no position to attack the judgment in the absence of fraud, collusion, or bad faith. If the judgment was obtained in good faith, the insured may not again litigate the issues that resulted in the judgment. [Citations omitted.]

\* \* \* \* \* \*

'It is a well-settled principle that where a person is responsible over to another,

either by operation of law or express contract, and he is duly notified of the pendency of the suit against the person to whom he is liable over, and full opportunity is afforded him to defend the action, the judgment, if obtained without fraud or collusion, will be conclusive against him, whether he appeared or not.' 27 Am.Jur., Indemnity, s. 35, p. 478. See, also, 42 C.J.S. Indemnity § 32, p. 613; 50 C.J.S. Judgments § 811, p. 360; *Hawkeye Casualty Co. v. Stoker*, [(1951) 154 Neb. 466, 48 N.W.2d 623]; *Jones v. Southern Surety Co.*, 210 Iowa 61, 230 N.W. 381; *American Fidelity & Casualty Co. v. Williams*, Tex.Civ.App., 34 S.W.2d 396."

126 N.W.2d at 475–76.

▆ We are in accord with the Supreme Court of Nebraska's holding in *Metcalf, supra*, and think that the trial court's decision in the instant case is correct. The United States Court of Appeals for the Fifth Circuit expressly adopted this position in *Coblentz v. American Surety Company of New York*, (5th Cir. 1969) 416 F.2d 1059.[1] *Accord, State Farm Mutual Automobile Insurance Company v. Paynter*, (1979) 122 Ariz. 198, 593 P.2d 948; *Damron v. Sledge*, (1969) 105 Ariz. 151, 460 P.2d 997.

▆ We have already determined that the insurance policy was in effect on September 2, 1967, the day of the accident. There is no question, then, that American Family was obliged to defend its insured in the tort action arising from the accident. The policy states:

"[T]he company shall defend with counsel of its choice any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; . . ."

There is no question that American Family denied liability and refused to defend the Englerts in the lawsuit. In its letter of October 13, 1967, American Family apprised Mrs. Englert that:

"It would be our suggestion that you personally contact Mr. Hurlbert, and anyone else having a claim as a result of the accident of September 2, 1967, to see what disposition you can make of it. *This Company will not be obligated in any way* due to the mis-statements on the application for insurance." (Our emphasis.)

Having adopted the position taken by the Supreme Court of Nebraska in *Metcalf, supra*, that an insurer may not hide behind the "legally obligated to pay" language of the policy after it abandons its insured and the insured settles the claim against him by agreement, we hold that there was no genuine issue as to any material fact, that the plaintiffs were entitled to judgment as a matter of law, and that the trial court properly awarded summary judgment to the plaintiffs.

*Issue III.*

Finally, American Family argues that its motion for summary judgment was improperly denied. Due to our disposition of the questions arising in Issues I and II, American Family was not entitled to judgment as a matter of law, and American Family's position to the contrary is without merit.

For the foregoing reasons, the action of the trial court in granting plaintiff's motion for summary judgment is affirmed.

Affirmed.

ROBERTSON and YOUNG (participating by designation), P. JJ., concur.

---

**1.** Recall that the court's holding in the *Coblentz* case was specifically rejected in *Huffman, su-* *pra*, relied upon by American Family.