**Marcia Lynne CURTIS,
Appellant–Plaintiff,**

v.

**AMERICAN COMMUNITY MUTUAL
INSURANCE COMPANY,
Appellee–Defendant.**

No. 49A04–9208–CV–287.

Court of Appeals of Indiana,
Fourth District.

March 22, 1993.

Janet O. Vargo, Gloria K. Grinnan, W. Brent Gill, Pardieck, Gill & Vargo, Indianapolis, for appellant-plaintiff.

Robert B. Clemens, Barbara J. Weigel, Ice, Miller, Donadio & Ryan, Indianapolis, for appellee-defendant.

CONOVER, Judge.

Plaintiff–Appellant Marcia Lynne Curtis appeals the trial court's grant of summary judgment in favor of American Community Mutual Insurance Company (American Community).

We affirm.

Curtis present two issues for our review:

1. whether the trial court erred in finding there was no genuine issue of material fact concerning the truth or falsity of her representations on her insurance application and finding the representations were material to the risk; and

2. whether the trial court erred in concluding there was no genuine issue of material fact as to the medical condition at issue.

On April 21, 1983, Curtis (whose maiden name was Hoffman) visited her physician Dr. James A. Sabens for a pelvic exam and pap test. The pap test results were abnormal so Dr. Sabens referred her to a specialist, Dr. McAree. In May of 1983, Dr. McAree performed a D & C and a cervical conization to remove what he had diagnosed as a carcinoma *in situ.*

Over the next four years, Curtis returned to Dr. Sabens for annual pelvic exams and pap tests as well as routine medical problems. On August 20, 1987, during Curtis's annual pelvic exam and pap test, Dr. Sabens noted she had a marked cervical ectropion.[1] When the subsequent pap test of August, 1987, was normal, Curtis did not go for any further gynecological care. However, she returned for treatment of a back injury.

On February 26, 1988, Curtis met with an insurance agent and filled out an application form for health insurance with American Community. She answered a series of questions. She responded "yes" to the question of whether she had been examined by a doctor in the last 10 years. She listed the names and addresses of both Dr. Sabens and Dr. McAree as well as identifying the D & C performed by Dr. McAree in 1983. She did not provide information regarding Dr. Sabens's August, 1987 diagnosis. She answered "No" to the following questions:

A. To the best of your knowledge and belief, do you have any physical ... disorder, ... any deformity, ...?

. . . . .

C. Have you ever had cancer ...?

F. Have you any injury, ailment or deformity which MAY require a surgical operation or hospitalization?

G. Have you had any symptoms for which you intend to seek medical advice or treatment?

She also signed an authorization for the release of her medical history.

Subsequently, American Community contacted Dr. Sabens's office in order to obtain Curtis's medical information. There was some confusion before the office manager located Curtis's chart under her maiden name Hoffman. Eventually, the office

---

1. Ectropion is the rolling outward of the margin of the part. *Stedman Medical Dictionary* (4th Unabridged Lawyers 1976). In laymen's terms, Curtis had a tipped uterus.

manager provided American Community with the requested information over the telephone. This information showed abnormal pap test results of April 21, 1983, but normal pap and pelvic exams from 1984 through 1987. However, when American Community sent the information from the telephone interview to Dr. Sabens's office to be verified, the office manager was unable to verify it when it came under the name Curtis, not Hoffman. American Community issued Curtis a policy effective April 25, 1988.

In June, 1988, Dr. Geisler performed a hysterectomy for Curtis. American Community denied her insurance benefits, alleging nondisclosure of her past medical history. On March 21, 1990, Curtis filed a complaint seeking to recover compensatory and punitive damages.

American Community filed a motion for summary judgment on the grounds Curtis's application for health insurance had failed to disclose material facts of her prior medical history and she failed to offer evidence of any conduct which would warrant punitive damages. In support of its motion, American Community presented Curtis's medical records and affidavits from Dr. Sabens's office. This evidence asserted that after a routine cervical exam and pap test, Dr. Sabens found she had severe cervical ectropion and discussed the possibility of a hysterectomy with her. Curtis told him she could only spend a few hundred dollars on such care because she did not have insurance. Additionally, American Community presented an affidavit from Donna Yemc along with Curtis's application which did not list this visit or diagnosis. Yemc stated if Curtis had informed the company her 1987 examination showed a ectropion of the cervix, American Community would have issued a coverage rider excluding any disorder of the genital organs. In response, Curtis relied on her

answers to interrogatories, in which she denied being so advised in 1987, and on her medical records from Dr. Sabens's office.

After examining the pleadings and evidence presented, the trial court granted American Community's motion in full. Curtis appeals.[2]

■■■ Indiana Trial Rule 56 places the burden on the movant to establish the propriety of granting summary judgment. The moving party must make a prima facie showing 1) that there is no issue as to any material fact, and 2) that the movant is entitled to judgment as a matter of law. If both requirements are met, the burden shifts to the nonmoving party to show specific facts indicating an issue of material fact. *Chrome Deposit Corp. v. Indiana Dept. of State Revenue* (1990), Ind. Tax, 557 N.E.2d 1110, 1117. All doubts and inferences are resolved in favor of the nonmovant. *Mauller v. City of Columbus* (1990), Ind.App., 552 N.E.2d 500, 502, *trans. denied.* Under the recent change in the rule, the court shall make its determination from the pleadings, answers to interrogatories, depositions, admissions on file, affidavits, and testimony designated to the court by the parties in support or opposition of the motion, rather than the whole record. *Babinchak v. Town of Chesterton* (1992), Ind.App., 598 N.E.2d 1099, 1101, *reh. denied.* No judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court. T.R. 56(H); *Id.*

Curtis contends there are material issues of disputed fact as to whether she concealed her 1987 diagnosis and the falsity of the application responses.[3]

The ability of an insurance company to avoid coverage based upon a misrepresen-

---

**2.** In her appellant's brief Curtis addresses only the claim for compensatory damages. Thus, the trial court's ruling on the punitive damage issue is uncontested.

**3.** Curtis also contends her medical condition in 1983 was not material to the risk. The affidavit

of Donna Yemc made no reference to Curtis's 1983 medical condition as material to the risk. Likewise in its appellee's brief, American Community did not assert the 1983 diagnosis to be a material fact. Therefore, we need not address this argument.

tation on an application is controlled by statute. IND.CODE 27–8–5–5(c) provides:

(c) The falsity of any statement in the application for any policy covered by this chapter [Accident and Sickness Insurance—Policy Provisions] may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer.

■■■ A representation is material if the fact omitted or misstated, if truly stated, might reasonably influence the insurer's decision whether to issue the policy or to charge a higher premium. *Bush v. Washington Nat. Ins. Co.* (1989), Ind.App., 534 N.E.2d 1139, 1142, *trans. denied.* False representations concerning a material fact, which mislead, will void an insurance contract, just as any other contract, regardless of whether the misrepresentation was innocently made or made with a fraudulent intent. *Watson v. Golden Rule Ins. Co.* (1990), Ind.App., 564 N.E.2d 302, 304.

Although American Community initially argued in its motion for summary judgment Curtis had falsely answered questions concerning her history of either cancer or ailments which might require surgery and her intent to seek medical treatment, it did not present evidence to show her responses to these questions were the basis for its denial of coverage. Instead, American Community presented evidence to show as a matter of law it was entitled to deny coverage of Curtis's hysterectomy because she failed to disclose her preexisting cervical ectropion.

■ In support of its motion for summary judgment, American Community offered an affidavit from Donna Yemc, its insurance underwriter, stating had Curtis disclosed her August, 1987, cervical examination revealed a marked ectropion of the cervix, American Community would have issued a rider to her coverage excluding any disease or disorder of the genital organs. In response, Curtis introduced no contrary evidence. There can be no doubt the omission of Curtis's cervical ectropion from the application for health insurance were material to the risk undertaken by American Community, and on this question we feel reasonable minds could not differ. *See Watson*, 564 N.E.2d at 306 (materiality established by affidavit from claims analyst).

While Curtis concedes the omission of diagnosis may be material to risk, she argues there is an issue of material fact as to whether she concealed the 1987 diagnosis. As a matter of law, it is not necessary for American Community to prove Curtis intentionally omitted the 1987 diagnosis. It need only establish the representation in the application was 1) false, and 2) material to the risk involved. *Watson*, 564 N.E.2d at 304. It is evident from the application Curtis omitted Dr. Sabens's 1987 exam and diagnosis when asked on the application, "Have you been examined, advised or treated by any physician ... or been hospitalized for any reason within the past 10 years?" Therefore, American Community established no material issue of fact exists as to whether her answer on her application was false.

■ Curtis presents the legal argument that American Community had been placed on "inquiry notice" because she provided Dr. Sabens's name, address and telephone number on her application. She cites *State Farm Mut. Ins. Co. v. Price* (1979), 181 Ind.App. 258, 396 N.E.2d 134, 137.

In *State Farm v. Price,* this court acknowledged the concept of "inquiry notice" in the context of an automobile policy. We found while the insurer is bound to use ordinary care and diligence to guard against misrepresentation, a party to a contract may rely on representations of fact where the exercise of reasonable prudence does not dictate otherwise. *Id.* Furthermore, we held where the party has no reason to doubt the validity of the statement, he may rely thereon without undertaking investigation or further inquiry. Nonetheless, the mere occurrence of a false representation does not necessarily require the other party to ascertain the truth of the representation. *Id.*

Curtis's argument cannot defeat the evidence American Community presented in

support of its summary judgment motion. Curtis's claim was denied within the express three year-statutory period of contestability allowed by our legislature for accident and sickness insurance. IC 27–8–5–3(a)(2).[4] The undisputed facts are Curtis failed to disclose the material condition of her cervical ectropion and is, therefore, not entitled to coverage for her hysterectomy. IC 27–8–5–5.

Curtis raises another issue relating to the policy itself. She contends there are genuine issues of material fact on the question of coverage exclusion in the insurance contract. She argues the hysterectomy should be covered despite the policy's exclusion section since there was a complete failure of evidence to establish the cancer condition which resulted in the hysterectomy had manifested itself at the time Curtis completed her application for insurance. American Community did not deny coverage based on the exclusion clause in Curtis's insurance policy. Rather, it denied coverage based on the misrepresentations on her application. Therefore, we need not reach this issue.

There being no genuine issue of any material fact, the trial court did not err in finding American Community was entitled as a matter of law to summary judgment on the issue of coverage.

Affirmed.

SHARPNACK, C.J., and CHEZEM, J., concur.

---

4. Each health and accident insurance policy in Indiana must contain a provision which provides after three years from the issuance date, no misstatement, except fraudulent misstatements, made in the application shall be used to void the policy or to deny a claim for loss commencing after the expirations of such three year period. IC 27–8–5–3(a)(2).