Patricia A. RUHLIG, Appellant–Plaintiff,

v.

AMERICAN COMMUNITY MUTUAL
INSURANCE COMPANY,
Appellee–Defendant.

No. 67A01–9709–CV–288.

Court of Appeals of Indiana.

June 29, 1998.

Delbert H. Brewer, Greencastle, for Appellant–Plaintiff.

Robert B. Clemens, Debra L. Burns, Bose McKinney & Evans, Indianapolis, for Appellee–Defendant.

## OPINION

KIRSCH, Judge.

Patricia A. Ruhlig appeals the entry of summary judgment in favor of American Community Mutual Insurance Company (American Community). She raises several issues for our review which we consolidate and restate as: Whether Ruhlig's omissions from the American Community insurance application were material misrepresentations as a matter of law and thus provided sufficient basis to retroactively rescind the policy.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In March of 1993, Ruhlig applied for medical insurance through American Community. Ruhlig completed a document entitled "Application for Insurance to American Community Mutual Insurance Company" (application). *Record* at 11. The application required Ruhlig to answer several questions pertaining to her medical history and her general health. Application question 7(B) asked Ruhlig if she had "been examined, advised or treated by any physician, therapist, psychologist, chiropractor, or other practitioner or been hospitalized for any reason within the past 10 years[,]" and if so to explain. *Record* at 12. Ruhlig responded "yes" and listed her hospitalization for pneumonia in December of 1990. *Record* at 12. Application question 7(K) asked Ruhlig if she was "currently taking medication, or [had she] taken any medication in the last 5 years for any reason[.]" *Record* at 12. The question requested her to list the type and purpose for taking the medication, to which Ruhlig responded, "Estratab—hormones." *Record* at 12. Ruhlig also stated in the application that she had smoked tobacco within the last twelve months. As part of the application, Ruhlig authorized the release of all her medical records to American Community. After Ruhlig completed and submitted the application, American Community issued her an insurance policy taking effect April 1, 1993. Ruhlig paid the required premiums.

In June of 1994, Ruhlig underwent surgery for a coronary problem and incurred $41,508.26 in medical expenses, which were submitted to American Community for payment. American Community subsequently requested Ruhlig's medical records to investigate her claim.

American Community reviewed the medical records and discovered that Ruhlig had been diagnosed in October of 1991 with chronic obstructive pulmonary disease (COPD) and had taken the prescription drug, Prednisone, from the time of such diagnosis to within thirty days of her insurance application. The medical records also indicated that Ruhlig had a diagnosed history of pulmonary fibrosis and lumbar disc disease within the past ten years and prior to the

completion of the application. Further, American Community discovered that prior to the completion of the application and within the last five years Ruhlig had been taking Proventil and Theo–Dur, both prescription medications. Also, the medical records indicated treatments by other health care providers not listed on the application.

Due to the omissions from the application, American Community rescinded Ruhlig's policy retroactively to the date of issuance, refunded her premiums, and refused to pay her claim. As a result, Ruhlig filed a complaint seeking payment of her incurred medical expenses, alleging that American Community breached the insurance contract without cause. American Community responded with a counterclaim for declaratory judgment. American Community filed a motion for summary judgment, claiming that Ruhlig's omissions on her application were material misrepresentations which entitled it to retroactively rescind the policy because had such information been provided prior to issuance, the policy would never have been issued.

With its Motion for Summary Judgment, American Community included the Affidavit of Kathe Burdette, an underwriter for American Community. In the affidavit, Burdette attested, "[h]ad Ms. Ruhlig's diagnosis of chronic obstructive pulmonary disease, pulmonary fibrosis, and lumbar disc disease been disclosed on the application for insurance, American Community would have declined Ms. Ruhlig for insurance coverage." *Record* at 57.

The trial court granted summary judgment in favor of American Community and stated in its Findings Of Fact And Conclusions Of Law:

"7. Based upon the disclosures made in Ms[.] Ruhlig's Application, American Community issued Policy no. C 680–1298358, with an effective date of April 1, 1993.

. . . .

9. Based upon the diagnosed chronic obstructive pulmonary disease, pulmonary fibrosis, and lumbar disc disease, Ms. Ruhlig would not have qualified for an insurance policy with American Community.

. . . .

5. The foregoing misrepresentations, whether innocent or intentional, were material, in that American Community would not have issued the policy to Ms. Ruhlig had it known Ms. Ruhlig's true health history."

*Supplemental Record* at 13–16.

## DISCUSSION AND DECISION

When reviewing a decision on a summary judgment motion, this court applies the same standard as the trial court. *Wickey v. Sparks,* 642 N.E.2d 262, 265 (Ind.Ct.App. 1994), *trans. denied* (1995). Summary judgment shall be granted if the designated evidentiary matter demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Wickey,* 642 N.E.2d at 265. All facts and reasonable inferences must be construed against the moving party. *Sizemore v. Arnold,* 647 N.E.2d 697, 699 (Ind.Ct.App.1995). We will affirm a summary judgment ruling on any legal theory which is consistent with the designated evidence in the record. *Crist v. K–Mart Corp.,* 653 N.E.2d 140, 142 (Ind. Ct.App.1995), *trans. denied* (1996). "Under Indiana's standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the nonmovant required to come forward with contrary evidence." *Jarboe v. Landmark Community Newspapers,* 644 N.E.2d 118, 123 (Ind.1994). Our supreme court specifically rejected the federal standard that requires the non-moving party "to make a showing sufficient to establish the existence of each challenged element upon which the non-movant has the burden of proof." *Jarboe,* 644 N.E.2d at 123 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 272 (1986)).

### I. Materiality of the Omission

The ability of an insurance company to void coverage on the basis of a misrepresentation in an application is controlled by statute. IC 27–8–5–5(c) states, "The falsity of any statement in the application for any

policy covered by this chapter may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer." False representations on an insurance application made by an insured concerning a material fact, which mislead, will void an insurance contract, just as in any other contractual relationship, regardless of whether the misrepresentation was innocently made or made with fraudulent intent. *Watson v. Golden Rule Ins. Co.*, 564 N.E.2d 302, 304 (Ind.Ct.App.1990); *American Family Mut. Ins. Co. v. Kivela*, 408 N.E.2d 805, 810 (Ind.Ct.App.1980). A representation is material if the fact omitted or misstated, if truly stated, might reasonably have influenced the insurer in deciding whether to reject or accept the risk or charge a higher premium. *Bush v. Washington Nat'l Ins. Co.*, 534 N.E.2d 1139, 1142 (Ind.Ct.App.1989), *trans. denied.* Whether a misrepresentation is material is normally a question of fact, unless the evidence is such that there can be no reasonable difference of opinion. *American Family*, 408 N.E.2d at 810.

■ Here, Ruhlig indicated on the application that the only affliction she had been treated or hospitalized for, within ten years prior to completing the application, was pneumonia. Her medical records indicate, and she does not deny otherwise, that she had been diagnosed with COPD, pulmonary fibrosis, and lumbar disc disease, had been prescribed several medications not listed on her application, and had seen physicians that went unnamed on the application. There is no question that Ruhlig made false representations on the application. The issue is whether the misrepresentations were material.

In support of its Motion for Summary Judgment, American Community offered the affidavit of one of its underwriters, Burdette, swearing that "[had] Ms. Ruhlig's diagnosis of chronic obstructive pulmonary disease, pulmonary fibrosis, and lumbar disc disease been disclosed on the application for insurance, American Community would have declined Ms. Ruhlig for insurance coverage." *Record* at 57. American Community's Underwriting Manual, more instructively, sup-

ports this assertion, indicating that insuring a person with COPD is "ACCEPTABLE ONLY IF NON-SMOKER OR IF SMOKING DISCONTINUED FOR AT LEAST 1 YEAR." *Record* at 127. Ruhlig does not dispute that she was a smoker at the time of her application.

In *Curtis v. American Community Mut. Ins. Co.*, 610 N.E.2d 871 (Ind.Ct.App.1993), this court upheld the trial court's grant of summary judgment in favor of the insurance company, finding that the omissions of a preexisting medical condition from the application were material, warranting denial of coverage for incurred medical costs. The finding of materiality was supported by a treating physician's affidavit, the insured's medical records, and an affidavit from the insurance company's underwriter attesting that had the insured disclosed her preexisting medical condition to the insurance company, a rider clause excluding any disease or disorder related to the condition would have been issued, rather than a full coverage policy. *Id.* at 873–74. Also, in *Watson*, 564 N.E.2d 302, this court affirmed the grant of summary judgment in favor of the insurance company's contractual right to void a policy where material misrepresentations were made on the application. The *Watson* court, in finding as a matter of law that the representations were material, noted that the insurance company submitted an affidavit from the senior underwriter indicating that a policy would not have been issued to the insured had his alcoholism and drug addiction been disclosed on the application. *Id.* at 306.

■ The relationship between the prior diseases that were omitted from the application and Ruhlig's surgery is irrelevant. *See New York Life Ins. Co. v. Kuhlenschmidt*, 218 Ind. 404, 33 N.E.2d 340 (1941) (insurer need not prove concealed ailments caused condition resulting in insured's death to show materiality of misrepresentations in a life insurance policy but whether misstatements would have reasonably influenced insurer). American Community need only demonstrate that it would have uniformly denied an applicant based upon Ruhlig's true and complete application, a forty-six-year-old smoker *with COPD*. The Underwriting Manual and the

Burdette affidavit indicate that the policy would have been uniformly denied under such circumstances.

■ Ruhlig contends that American Community is precluded from rescinding the policy because it was on notice regarding her condition. Ruhlig argues that because American Community knew her age and that she smoked tobacco, and had the ability to obtain more medical information on her, American Community had sufficient information to conclude that she had COPD. Ruhlig submitted a physician's affidavit, wherein the doctor offered "the opinion that most 53–year–old[1] females who smoke have COPD," to support this claim. *Record* at 156.

■ If representations in an insurance application are false and material the policy may be rescinded, unless the insurance company has in some way waived the benefit of avoidance by its conduct and knowledge of the facts. *Metropolitan Life Ins. Co. v. Head*, 86 Ind.App. 326, 157 N.E. 448 (1927). In *State Farm v. Price*, [181 Ind.App. 258, 396 N.E.2d 134, 137 (1979)], this court acknowledged the concept of 'inquiry notice' in the context of an automobile policy. We found while the insurer is bound to use ordinary care and diligence to guard against misrepresentation, a party to a contract may rely on representations of fact where the exercise of reasonable prudence does not dictate otherwise. *Id.* Furthermore, we held where the party has no reason to doubt the validity of the statement, he may rely thereon without undertaking investigation or further inquiry. Nonetheless, the mere occurrence of a false representation does not necessarily require the other party to ascertain the truth of the representation. *Id; see also Curtis*, 610 N.E.2d at 874.

■ An insurer is not precluded from denying coverage due to an omission on an application because the insured provided her doctor's name, address, and phone number.

*Curtis*, 610 N.E.2d at 874–75. American Community does not have a duty to obtain and review Ruhlig's medical records for inconsistencies or misstatements on her application. The application, signed by Ruhlig, contained the following affirmation, "I represent that the above statements and answers are true and complete to the best of my knowledge and belief … The undersigned applicants and agent certify that each person proposed for insurance has read the complete application and that he/she realizes that any false statement or misrepresentation, if material to the risk, may result in loss of coverage under this policy." *Record* at 12. Here, American Community could have reasonably believed Ruhlig was truthful in answering the application questions concerning her medical history and may reasonably rely on those representations. *See Curtis*, 610 N.E.2d at 874. Here, American Community's underwriting manual and the Burdette affidavit show that they relied upon the accuracy of the representations. Ruhlig's designated materials fail to present any evidence that American Community did not so rely.

Ruhlig also argues, without citation to legal precedent, that the application insufficiently warned Ruhlig of the consequences of making a misstatement. She asserts that the warning was in small print, not obviously located, and did not use language easily understandable to the lay person. Further, she claims that the medical release, as part of the application, implies that medical records will be obtained and used in conjunction with the application for the purposes of issuing the policy. No law cited to this court imposes such an obligation on the part of an insurer.

We find that the omission of the diseases from the application was material to the risk undertaken by American Community. There being no genuine issue of any material fact, the trial court did not err in finding Ameri-

---

1. We note some confusion in the Record regarding Ms. Ruhlig's age. Her application listed her age as forty-six (46) years. *Record* at 11. Ruhlig's response to American Community's motion for summary judgment states her age as fifty-three years of age. *Record* 102. Dr. Haggerty in his affidavit refers to a fifty-three (53) year-old female. In its underwriting manual, American Community makes *no distinction between* applicants suffering from COPD who are 46 years of age and those who are 53 and, thus, the age discrepancy does not constitute a material question of fact.

can Community was entitled as a matter of law to summary judgment.

Affirmed.

SULLIVAN and BAKER, JJ., concur.