BERRY-JEFFERSON CORP., PEOPLES TRUST BANK, TRUSTEE *v.* WELDON R. GROSS, ORVIS A. DELLINGER, HAROLD L. VENIS, DOROTHY E. BULMAHN.

[No. 3-974A150. Filed January 13, 1977.]

*David B. Keller, Kenneth M. Waterman,* of Fort Wayne, *Robert J. Parish,* of Fort Wayne, *David L. Wangberg,* of Fort Wayne, for appellants.

*Thomas M. Shoaff, Clifford E. Simon, Jr.,* of Fort Wayne, for appellees.

STATON, P.J.—The buyers of a college brought a suit alleging: (1) mutual mistake; (2) oral representations; (3) fraud, misrepresentation, deceit, and concealment; and (4) unjust enrichment. The trial court rendered a judgment in favor of the sellers.[1] The buyer's[2] appeal from this judgment is limited to the issue of mutual mistake.[3] After reviewing the record, we conclude that the judgment of the trial court should be affirmed.

## I.

### Evidence

Buyers approached sellers in October of 1964, concerning the purchase of International Business College, Inc. Various meetings and negotiations followed, culminating in the purchase of the College. A purchase agreement was executed by the buyers on December 8, 1964, and it was accepted by the sellers on that same date. It contained in pertinent part the following terms and conditions:

"1. . . . assets shall be in substantially the same amount as shown on the balance sheet of said Company dated December 31, 1963, (which was prepared on a cash basis and hence does not disclose all of the assets or liabilities of the Corporation) except as the same may have been increased or decreased by transactions in the ordinary course of the business of the corporation. It is expressly understood and agreed that cash on hand or in bank of International Business College, Inc., is to be retained by the selling stockholders and is not included in the sale.

"2. Inasmuch as By the purchase of said stock, the undersigned [buyers] will assume the liabilities of the Corporation and will be entitled to all of its assets, except cash, You [sellers] will pay all ~~other~~ [sic] debts and liabilities

1. Defendants-appellees: Weldon R. Gross, Orvis A. Dellinger, Harold L. Venis, and Dorothy E. Bulmahn.

2. Plaintiff-appellant: Berry-Jefferson Corporation (Fort Wayne Commercial College, Inc., was the original name of the buyer; Berry-Jefferson assigned its rights in the cause of action to Peoples Trust Bank, Trustee [Berry-Jefferson in liquidation], on August 31, 1971).

3. Buyers also raise the question of unilateral mistake on appeal, but as it was not raised in their Motion to Correct Errors, that issue is waived. *Adkins* v. *Elvard* (1973), 155 Ind. App. 672, 294 N.E.2d 160.

. . . except for the obligations of said Corporation, (1) arising under tuition or enrollment contracts upon which prepayments have been made by or for students or prospective students or any refunds that may now or hereafter be owing thereunder. . . . Said liabilities for prepaid enrollment or tuition fees . . . are expressly to be assumed by the undersigned as the purchaser of all of the stock of the corporation."

The purchase price was $750,000.00. Buyers now complain that there was never a "meeting of the minds" on the dollar amount of prepaid student tuition, and that because of this mutual mistake, they should recover damages. Buyers assert that they bought the College thinking that prepaid tuition was "slightly over $50,000.00" when it was, in fact, $235,000.00. In light of the purchase agreement, drafted by the buyers, and after reviewing the record, we conclude that the amount of prepaid tuition was not a material element of the contract, and that the instrument explicitly provides that the sellers shall retain cash assets.

## II.

### Mutual Mistake

Buyers couch their argument in terms of mutual mistake. Although they admit that sellers provided opportunity for investigation of sellers' books prior to the sale, and that buyers did examine such books and records; yet, buyers maintain that the amount of prepaid student tuition was a material part of the bargain and that amount was misunderstood by the parties. Sellers testified that they were operating on a cash basis and thus did not know at the time the purchase price was set how much prepaid tuition there was. This is the reason sellers invited the buyers to look at the seller's books so that the buyers could determine for themselves what that figure was, if it was important to the buyers. The sellers further emphasized that "it [amount of prepaid tuition] didn't matter to us." There was evidence that the purchase price

of the College was computed without reference to prepaid tuition.[4]

For there to have existed mutual mistake in the bargain, the amount of prepaid tuition must have been a material component. The basic dispute in this case is the mutuality of the mistake: the sellers contend that there was no mistake and that prepaid tuition was immaterial; the buyers contend that prepaid tuition was material and a mistake existed.

After carefully reviewing the record, we agree with the trial court and conclude that if a mistake existed as to the amount of prepaid tuition that mistake was unilateral. Thus, the buyers are here merely bemoaning their own bad business decision. Several factors are important.

First, the purchase agreement stated explicitly that sellers would keep all prepaid tuition. Thus an implied contract cannot exist; an express contract covers the identical subject. *Myers* v. *Maris* (1975), 164 Ind. App. 34, 326 N.E.2d 577. Moreover, the buyers drafted that agreement.

Second, the sellers provided opportunity for the buyers to determine what the amount of prepaid tuition was, prior to the sale. The buyers had a Certified Public Accountant (CPA) examine the records. They relied upon this examination of the accounting records.

Third, the proper remedy for mutual mistake is recission of the contract. The buyers have never requested this remedy. Furthermore, the remedy no longer exists because the college cannot now be restored to the sellers. The buyers discovered what they term the "mistake" as

---

4. Sellers testified that the price of the college was determined by a rule of thumb then prevalent in the industry: taking an average of annual receipts of the college and adding to that the value of the real estate. One of the buyers stated that the buyers had examined the College's tax returns and "we concluded that it was a profitable business."

early as 1965. Yet, aware of the problem, the original buyers did not notify the sellers until after they had negotiated a sale of the college to a third party. Buyers concluded *that sale before* initiating the suit against sellers:

"It is the law in Indiana that in all cases of recission of a contract the party rescinding must restore or offer to restore everything of value which he has received under the contract." *Sofnas* v. *John Hancock Mutual Life Ins. Co.* (1939), 107 Ind.App. 539, 542-43, 21 N.E.2d 425, 426. *Lindenborg* v. *M & L Builders and Brokers, Inc.* (1973), 158 Ind.App. 311, 302 N.E.2d 816.

Buyers have placed themselves in the position of having no remedy, even if there had existed mutual mistake.

Fourth, buyers claim as "damages" the difference between the amount buyers' accountant had computed as prepaid tuition ($52,800.00), and the amount buyers later discovered was prepaid ($235,294.80). This difference ($182,494.80) was designated "damages," when it really represented a benefit buyers would *now like to claim as their own*. The testimony of Mr. DeNeal Hartman, the buyers' accountant, reveals in response to questioning:

"Q. Now with respect to the damages alleged by the Plaintiffs in this claim, Mr. Hartman. Is it not a fact that with respect to prepaid tuition the Plaintiffs are not claiming teach-out costs as supportive to their damages?

"A. I'm not sure if I understand the question.

"Q. Now the Plaintiffs have complained in their complaint that they are entitled to damages from the sellers in the amount of One Hundred Eighty Two Thousand Four Hundred Ninty Four Dollars and Eighty Cents. Is it not a fact that those damages are not predicated on teach-out costs?

"A. No, those damages are based on the fact that the sellers kept that much additional cash —

"Q. That's right.

"A. —and they had to teach the students out.

"Q. That's right. They are not predicated upon teach-out expenses?

"A. Well, the teach-out expenses remained fairly — remained the same, fairly the same.

"Q. Well, Mr. Hartman, let me ask you, for the record, if you recall answering this question in interrogatories 'Question. You claim One Hundred Eighty Two Thousand Four Hundred Ninety Four Dollars and Eighty Cents damages resulting from the alleged discrepancy between supposed and actual prepaid tuition deposits. Are unanticipated costs of instructing students (teach-out costs) who had prepaid all or part of their tuition a component of this damage claim? Answer. No.' Now, is that a correct answer?

"A. That's a correct answer because —

"Q. All right. That's enough. Now the fact of the matter is, Mr. Hartman, you are predicating your damages upon the fact alleged by Plaintiffs that when you purchased this college you thought that the sellers had taken out a certain amount of prepayments and, in fact, you now claim that they had received more prepayment than you had thought they had received, is that not correct?

"A. That's right.

"Q. And the difference is the amount of damages that you are alleging?

"A. Right."

This "benefit," however, was clearly designated in the contract, and the buyers cannot now complain. We conclude that no errors exist, and we affirm the judgment of the trial court.

Garrard, J. and Hoffman, J., concur.

NOTE.—Reported at 358 N.E.2d 757.