John D. BUSH, Appellant
(Plaintiff Below),

v.

WASHINGTON NATIONAL INSURANCE COMPANY, Appellee
(Defendant Below).

No. 79A02–8709–CV–00358.

Court of Appeals of Indiana,
Second District.

March 9, 1989.

Sharon Funcheon Murphy, West Lafayette, for appellant.

John K. McBride, Jeffrey J. Newell, Ball, Eggleston, Bumbleburg & McBride, Lafayette, for appellee.

SULLIVAN, Judge.

John D. Bush appeals from a summary judgment granted in favor of Washington National Insurance Company. At issue is whether a misrepresentation made by Bush as to the existence of other insurance in his application for temporary major medical expense insurance was material, so as to justify Washington National's rescission of the policy.

We affirm.

In January of 1984, Jean Bush applied for a 180–day major medical expense policy from Washington National for her son, John. Later that month, Bush was hospitalized and incurred expenses of $38,599.17. After Bush filed a claim for benefits and the company became aware that Bush had been covered by another policy during the same period, Washington National refunded the premium and rescinded the policy.[1] The company claimed that Bush made a material misrepresentation (through his mother) on the application by answering that he did not have any hospital or medical expense insurance at the time of the application, when in fact Bush was covered under a policy issued by United Farm Bureau Family Life Insurance Company. Washington National claims it would not have issued the policy to Bush had it known that Bush was insured under another policy at the same time.

Bush subsequently brought suit against Washington National. The agency which sold the Washington National policies to Bush (Mayerstein–Burnell Financial Services, Inc.), was named as a co-defendant, as were James R. Ransom (the President of Mayerstein–Burnell) and Nancy Barbour (Ransom's administrative assistant). A motion for summary judgment was granted in favor of the latter three defendants,[2] leaving Washington National as the sole remaining defendant.

The application at issue consisted of one page. Aside from asking information concerning dependents, the term of the policy, and the amount of the desired deductible, the application asked only two questions of

---

1. John's father had applied for a 90–day major medical expense policy in October of 1983, on behalf of John. It was after this policy expired that Jean Bush applied for a second policy for their son. Although the first policy had already expired, the premium for that policy was also refunded and the policy rescinded.

2. This judgment was affirmed on appeal in *Bush v. Mayerstein–Burnell Financial Services, Inc.* (1986) 2d Dist.Ind.App., 499 N.E.2d 755.

the applicant. The first one requested information as to whether the coverage applied for was to replace any existing hospital or medical expense insurance, and if so, the termination date of that coverage. The second one was as follows:

"2. Do you or any listed dependent(s) now have hospital or medical expense insurance (other than coverage terminating on the date shown above), or application pending for such insurance?" Record at 39.

Immediately below this question, the application provided:

"If this question is answered YES, state name of person(s) to whom answer applies (such person is excluded from coverage):

I have read this application and represent that the information shown on it is true and complete, to the best of my knowledge and belief. I understand that the insurance, if issued, will become effective on the Policy Date, and that no benefits are payable for injury sustained before the Policy Date or sickness first manifested before the Policy Date. I also understand that each person named in Question 2 above is excluded from coverage under the policy." Record at 39.

Bush's mother answered the question as to other insurance erroneously, apparently due to her failure to recollect the other policy. The other insurance which was in force at the time was a Farm Bureau policy entitled "Hospital and Surgical Expense. Policy."[3]

The trial court here granted Washington National's motion for summary judgment, determining that only two "underwriting" standards were used by the company in issuing the disputed policy,[4] that "these standards [were] significant and meaningful, and that to ignore or disregard these standards or treat them as not material would render the insurance application meaningless...." Record at 126.

Bush essentially makes two arguments on appeal:

(1) that the existence of the other policy could not be considered material to the acceptance of the risk[5] due to its de minimus nature, and

(2) Washington National's own agent's manual dictates issuance of the policy despite the existence of other insurance.

When reviewing a grant of summary judgment, we determine whether an issue of material fact exists and whether the trial court correctly applied the law. The burden of establishing an absence of any genuine issue rests with the moving party, and any doubt must be resolved in favor of the opposing party. *Wingenroth v. American States Insurance Co.* (1983) 2d Dist. Ind.App., 455 N.E.2d 968. The trial judge may not weigh the evidence in a summary judgment proceeding. Even if the facts are undisputed, all reasonable inferences must be resolved against the moving party. *American Family Mutual Insurance Co. v. Kivela* (1980) 1st Dist.Ind.App., 408 N.E. 2d 805.

The ability of an insurance company to avoid coverage liability based upon an application misrepresentation is controlled by statute. Indiana Code 27–8–5–5(c) (Burns Code Ed.Repl.1986) provides as follows:

"(c) The falsity of any statement in the application for any policy covered by this chapter [Accident and Sickness Insurance—Policy Provisions] may not bar the

---

**3.** This court previously held, in the appeal of the summary judgment granted for the other three co-defendants named above, that the Farm Bureau policy was encompassed within the meaning of the term "hospital or medical insurance," as used in question two on the application. This policy paid the policy limits, only $1,125.00, of Bush's medical expenses.

**4.** The court did not state what these standards were, but apparently focused on the two main questions asked in the policy. It appears that only the second question could form the basis of

a standard, as the purpose of the first question (as to when the other policy, if any, was to expire) was merely to fix the time at which coverage under the Washington National policy was to begin.

**5.** In our previous decision we stated that it did not appear that the misrepresentation by Bush's parents was material. That statement, however, is not deemed conclusive in this case because the issue of materiality was not then before us and the statement was therefore dictum.

right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer."

██ A representation is material if the fact or facts represented reasonably enter into and influence the insurer's decision whether to issue the policy or to charge a higher premium. *Kivela, supra,* 408 N.E. 2d at 810. If the facts that are withheld or suppressed by the false answer would have reasonably entered into and influenced the company in its decision whether to issue the policy, then such false answers will avoid the policy. *Brunnemer v. Metropolitan Life Insurance Co.* (1938) 213 Ind. 650, 14 N.E.2d 97. False representations, concerning a material fact, which mislead, will avoid an insurance contract, just as any other contract, regardless whether the misrepresentation was innocently made or made with a fraudulent intent. *Metropolitan Life Insurance Co. v. Becraft* (1938) 213 Ind. 378, 12 N.E.2d 952. Whether false statements in an application concern material facts so as to avoid the policy is a question of fact for the jury where the evidence is such that reasonable men might differ in their conclusions, but is one of law when the evidence admits of no reasonable difference of opinion. *Id.* at 388, 12 N.E.2d 952.

### Issue I

██ Bush argues that the existence of other insurance is material only if reasonably careful and intelligent individuals would have regarded the existence of the Farm Bureau policy as substantially increasing the chances of the events insured against. He argues that the existence of the de minimus Farm Bureau policy does not increase any risk being undertaken in issuing the insurance and could even lessen Washington National's risk if the company were to adopt the position that payment would not be duplicated.[6] Bush also argues that the failure of Bush's mother to recollect the Farm Bureau policy when reviewing the application had nothing to do with her son's eventual hospital and subsequent medical expenses, and therefore Washington National should not be able to use her failure as a basis for voiding the policy.

Bush misstates the applicable test. The test is not whether the fact misrepresented increased the chances of the events insured against; nor does the misrepresentation have to increase the potential liability undertaken or have a direct causal relationship to the event insured against, although these things would certainly indicate materiality. As our supreme court stated in *New York Life Insurance Co. v. Kuhlenschmidt* (1941) 218 Ind. 404, 33 N.E.2d 340, the test of materiality is simply whether the fact, if truly stated, might reasonably have influenced the company in deciding whether it should reject or accept the risk. (For example, it was not necessary for the insurer in *Kuhlenschmidt* to prove that the concealed ailments caused the condition that resulted in death to prove the materiality of misrepresentations made in a life insurance policy.) Furthermore, although experts may give their opinion as to materiality, "the final inquiry is what *that company* might reasonably have done." *Id.* at 424–25, 33 N.E.2d 340 (emphasis supplied).

We recognize that courts in other jurisdictions have split on the question of whether the non-disclosure of other insurance is material so as to justify avoidance of a policy for a variety of reasons. *See, e.g., Garde v. Country Life Insurance Co.* (1986) 147 Ill.App.3d 1023, 101 Ill.Dec. 120,

---

**6.** It is not clear exactly how Bush uses the word "risk." Risk may refer to either the person or subject insured, or it may refer to the uncertainty as to future loss. It appears that Bush is equating the term here with liability. However, liability is not necessarily the same as risk. It is possible that the existence of other insurance could actually increase the company's risk (chance of future loss), because the insured could have an incentive to exaggerate claims or overutilize medical services if he had other insurance and the policies were not coordinated or offset to prevent duplication of benefits. Any malingering by an insured in turn could increase the company's liability. It is also true, however, that the existence of other insurance could reduce the company's liability if the company were to coordinate benefits with the other insurer.

498 N.E.2d 302; *Gold v. Mutual Benefit Health & Accident Association* (1937) 186 La. 905, 173 So. 525; 43 Am.Jur.2d *Insurance* § 1094 (1982); 7 *Couch on Insurance* 37:397–418 (2d ed. 1985). Bush cites two cases in which the court found that the nondisclosure of other insurance was not material. In *Kaplan v. Manhattan Life Insurance Co. of New York* (1939) D.C. Cir., 109 F.2d 463, the court found the amount of the nondisclosed insurance to be a factor. In *Limbaugh v. Monarch Life Insurance Co.* (1935) Mo.App., 84 S.W.2d 208, the court found that the misrepresentation was not material because the matter misrepresented did not actually contribute to the contingency or event upon which the policy became payable. Those cases are distinguishable, however, because the applications at issue did not automatically exclude from eligibility anyone with other insurance. Such exclusion was specified in the application here. The problem in the other two cases revolved around the insured's failure to disclose the full amount of his other insurance. *Limbaugh* is also distinguishable from the instant case because the applicable statutory law in Missouri specifically required such a causal connection. Our statute does not impose a similar requirement.[7]

None of the cases cited by Bush, or found by our independent research, reveal a situation factually similar to the instant case, i.e., none of the other cases involve a temporary policy, not subject to review and evaluation but instead effective upon application, where the sole criterion for eligibility was whether the applicant had other health or medical insurance currently in existence.

An insurance company is free to determine by its contract what risks it is undertaking to insure, so long as contract provisions do not violate statutory mandates or are not against public policy. *Ev-*

*ans v. National Life Accident Insurance Co.* (1984) 2d Dist.Ind.App., 467 N.E.2d 1216. Thus, we are not required to judge the wisdom of Washington National's criterion for eligibility, nor is Washington National required to justify its criterion, so long as it is not against public policy. At issue is not whether the Washington National criterion was reasonable, but given that criterion, whether the fact misrepresented can be said to have reasonably entered into Washington National's decision to issue the policy.

We recognize that a variety of conflicting policy concerns and rules of law come into play on this issue. On one hand, the court is to construe the contract liberally in order to give it effect rather than to make it void. *Prudential Insurance Co. of America v. Bidwell* (1937) 103 Ind.App. 386, 8 N.E.2d 123; *American Economy Insurance Co. v. Liggett* (1981) 3d Dist. Ind.App., 426 N.E.2d 136. Any ambiguity is to be resolved in favor of the insured. *Drake Insurance Co. of New York v. Carroll County Sheriff's Department* (1981) 2d Dist.Ind.App., 427 N.E.2d 1153. On the other hand, plainly expressed exceptions, exclusions and limitations are entitled to construction and enforcement as expressed. *Evans, supra* at 1219. The court cannot rewrite an insurance contract for the parties. *Id.* Furthermore, the court will make all possible attempts to construe contractual language so as not to render any words, phrases or terms ineffective or meaningless. *Holtzclaw v. Bankers Mutual Insurance Co.* (1983) 3d Dist.Ind.App., 448 N.E.2d 55, *trans. denied.*

The application itself was not ambiguous. Using the broadest terms possible, it clearly states that anyone with other health or medical insurance is excluded from coverage. This exclusion is incorporated in the policy itself. The term "covered person" is defined in the policy as "any person named

7. *But see, McDaniel v. Physicians Mutual Insurance Co.* (1981) Tenn., 621 S.W.2d 391 (the court found a Tennessee statute similar to our I.C. 27-8-5-5(c) (with an exception where the agent taking the application knew of the representation's falsity) was not in any way inconsistent with another Tennessee statute stating that no

misrepresentation would be deemed material unless made with the intent to deceive or unless the matter represented increased the risk of loss; the effect of the former statute was merely to add the possible issue of whether the agent knew of the false statement).

in the application for this policy, provided such person is eligible to become a covered person (see Section A of Part 2) and is not excluded from coverage under the policy." Part 2—Covered Person Provisions, Section A—Eligibility reads as follows: "The following persons are eligible to become covered persons if not named in the answer to question 2 in the application: ...." Record at 118.

Bush is correct that the company may have elected to issue a policy such as that involved here even if other insurance existed and to coordinate benefits with the other insurance company to avoid duplication of benefits. However, that is not what it chose to do, and we are not disposed to compel it to do so.

Reading the face of the application and the policy leads to that conclusion that the trial court did not err in determining that the misrepresentation as to other insurance was material to Washington National's issuance of the policy.

## Issue II

■ Bush further argues that Washington National's own agent's manual directs that the policy be issued and the claim paid, despite the existence of the other insurance. Bush bases this argument upon a document called "Health—General Instructions" (general instructions). Bush claims that the language contained in this document indicates that Washington National should have issued the policy. Specifically, Bush points to the following subsection:

*"Major Medical*

The Company will not issue major medical coverage if the applicant already has hospital or medical coverage in force or applied for. Hospital Indemnity insurance will not be considered hospital coverage in this case.

Major medical coverage is issued to persons who have hospital indemnity coverage (up to $100 DHB), subject to these deductible requirements, depending on the amount of hospital indemnity carried:

| Total DHB on Existing Hospital Indemnity Coverage | Minimum Deductible Required on Major Medical Policy |
|---|---|
| $50 or less | —$ 100 (no first-dollar option) |
| $51—$ 75 | —$ 500 |
| $76—$100 | —$1,000 |
| Over $100 | —Major medical not issued" |

Record at 94.

Washington National claims that the general instructions apply only to underwritten policies (those making inquiry into past and present health conditions) and are not applicable to Bush's short-term policy. Instead, Washington National claims that a document entitled "Nonrenewable Short-Term Major Medical Expense Policy (Policy Form CC3153)" (specific policy pages) governs Bush's policy.

Without deciding whether Washington National is bound by its agent's manual where the manual is not incorporated into

the policy, we review both documents at issue.

Bush claims that a parenthetical statement contained in the section entitled "Medical Examinations" exempting applicants for non-renewable, single premium policies from having to take the medical exam required for certain major medical applicants implicitly means that single premium policies such as Bush's are encompassed within the subsection entitled Major Medical.[8] We would agree with Bush, but for the exception contained in the following language: "The writing and participation

---

**8.** Bush's argument assumes that Farm Bureau hospital and surgical expense policy would fall within the "hospital indemnity insurance" exception referred to in the general instructions. We do not decide this question at this time.

limits shown in this section [Writing and Participation Limits] are the limits which apply to all currently issued Health Department policies, except as may be otherwise stated on the specific policy description pages." [9] Record at 93. Therefore, if the specific policy pages applicable to Bush's policy provide otherwise, the hospital indemnity exception for issuance of major medical coverage is inapplicable to Bush's policy.

The document which Washington National cites as controlling is applicable to Policy Form CC3153. This is the same policy which was applied for on behalf of Bush. [10] Washington National claims that the following "Specific Underwriting Guidelines" contained in the specific policy description pages [11] are consistent with the application provision denying coverage to anyone with other insurance:

### "SPECIAL UNDERWRITING GUIDELINES

This policy is designed for individuals and families having a temporary need for major medical insurance. Typical prospects for this coverage are persons between jobs; striking or laid-off employees who are temporarily left without an employer's group protection; job-seeking graduates who are no longer eligible for coverage under a school's or parent's medical insurance plan; new employees who have not yet satisfied the waiting period to qualify for their employer's group insurance program. The policy is not issued to persons already insured

under reimbursement-type coverage." Record at 91.

The general rule in interpreting insurance contracts is that, in the normal case, the court must simply apply the plain ordinary meaning of the contract language. *Indiana Comprehensive Health Insurance Association v. Dye* (1988) 3d Dist.Ind. App., 531 N.E.2d 505. If the word "reimbursement" is given its plain meaning, it would appear that the Farm Bureau policy would be considered a reimbursement-type policy. According to Webster's Second New International Dictionary, "reimburse" means:

"2. to make restoration or payment of an equivalent to (a person); to indemnify; as, to reimburse one for his losses."

Page 13 of the Farm Bureau policy states that "[a]ll indemnities under this policy are payable to the named insured...." Record at 80.

In his response to Washington National's motion for summary judgment, and also in his main brief, Bush did not rebut Washington National's argument that the specific policy description pages applied to Bush's policy. Bush did not offer rebuttal until his reply brief, where he attempts to inject an ambiguity into the guidelines by stating that "[e]ven those guidelines state, 'This policy is not issued to persons already insured under *reimbursement-type coverage*', without a definition of what is meant by that term. (As has been stated previously, the Farm Bureau policy at issue was a specific indemnity policy that only provided coverage of $15 per day for hospital expenses.)" [12] Reply Brief at 5.

**9.** The organization of the general instructions (in part) may be conceptualized as follows:
  I. Selection of Risks
    A. Medical Aspects of Risk Selection
    B. General Financial Picture
    C. Occupation, Sports and General Activities
    D. Residence, Language and Travel
  II. Writing and Participation Limits
    A. Disability Income Coverage
    B. Accidental Death and Dismemberment
    C. Business Overhead Expenses
    D. Major Medical
    E. Hospital Indemnity
  III. Medical Examinations

**10.** Although Bush argued that Washington National referred to a different policy than the one Bush actually had, CC3153 is the correct number of Bush's policy. Bush apparently focuses exclusively upon a typographical error contained in appellee's brief; however, the correct number is noted in the brief on pages 24 and 25.

**11.** These "description" pages are not pages in individual policies issued to a particular insured.

**12.** The Farm Bureau policy actually provided that the insurer would reimburse the insured for the hospital charges for room and board not to exceed the applicable daily room benefit,

If Bush's argument is that because the Farm Bureau policy was a specific indemnity policy it was not a reimbursement-type policy, it fails. We recognize that in cases of ambiguity, where more than one reasonable interpretation is possible, then the court must adopt the interpretation most favorable to the insured. *Dye, supra,* 531 N.E.2d at 507. However, we can find no other accepted meaning of the term "reimbursement," nor has Bush provided us with one. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7) requires an appellant to set forth the contentions of the appellant with respect to all issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review. Bush has failed to do so.

Although the consequences of our holding may seem extremely harsh as applied to Bush and may conflict with one's sense of equity, we are not permitted to rewrite the insurance contract to impose coverage by creating a de minimus exception to the requirement that applicants make accurate disclosures. We will not require litigation each time a similar situation occurs in order to delimit the de minimus exception. The exclusion was stated in as broad of terms as possible. We cannot hold that an ambiguity exists in favor of Bush, that a truthful answer might have led to issuance of the policy, nor that Washington National was not entitled to enforce the clear and unmistakeable consequences of the existence of other insurance vis-a-vis coverage under this policy.

The summary judgment is affirmed.

SHIELDS, P.J., and NEAL, J., concur.

which for Bush was $15, in addition to reimbursement of stated percentages for certain miscellaneous services and charges, up to the applicable maximum. The policy also provided partial reimbursement for amounts charged for operations or other services up to the maximum amount listed in the policy's basic surgical schedule. Finally, reimbursement for professional visits during hospital confinements by a physician was also provided up to $150 per period of disability.