Robert H. WATSON, Appellant
(Defendant Below),

v.

GOLDEN RULE INSURANCE
COMPANY, Appellee
(Plaintiff Below).

No. 45A03–9002–CV–67.

Court of Appeals of Indiana,
Third District.

Dec. 19, 1990.

Nathaniel Ruff, Lesniak & Ruff, East Chicago, for appellant.

Michael V. Gooch, John S. Beeman, Sandra S. Carr, Harrison & Moberly, Indianapolis, for appellee.

STATON, Judge.

Robert H. Watson appeals a summary judgment in favor of Golden Rule Insurance Company (Golden Rule) denying coverage under a health insurance policy and rescinding the policy. He raises four issues for our consideration, which we consolidate and rephrase as follows:

Whether the trial court properly granted summary judgment in favor of Golden Rule on the basis that the terms of the insurance policy allowed Golden Rule to rescind the contract based upon misrepresentations in the application for insurance.

We affirm.

On March 15, 1986, Watson applied for health insurance with Golden Rule by filling out and signing an "Application for Insurance." The application asked the following questions:

7. Has any person on this application, within the last 10 years, had any indication, diagnosis or treatment of:

\* \* \* \* \* \*

(f) any other disease, disorder (including alcohol or drug problems) or injury in the last 5 years?

8. Has any person on this application consulted or been treated by a doctor in the past 3 years?

Record, p. 54.

Watson answered "No" to question 7(f), and "Yes" to question 8, indicating that he had seen a Dr. Deporter in Hammond. Upon being contacted by a representative from Golden Rule, Watson indicated that he had seen Dr. Deporter for a cold. Relying upon Watson's representations in the application, Golden Rule issued a health and accident insurance policy.

In January, 1987, nine months after completing the application, Watson was hospitalized for treatment of alcohol and drug dependency. Watson submitted claims for reimbursement for this hospital stay to Golden Rule. Golden Rule investigated the claims and discovered that Watson, then 40, had a history of alcohol and drug abuse since he was 28. He consumed a fifth of whiskey a day, and for several years he had exhibited symptoms of chronic alcohol abuse such as amnesic blackouts, shakes, and hallucinations. His alcoholism affected his business and family life as well; he attributed the failure of a trucking business, at least in part, to his substance abuse. Watson's father had died of alcoholism.

Watson began using cocaine in 1979 or 1980, and by 1987 snorted or freebased up to a fourth of an ounce of cocaine per week. His cocaine abuse caused nosebleeds, paranoia, cocaine headaches, and hallucinations. In addition, Watson experimented extensively with other amphetamines, barbiturates, and hallucinogenics, including Quaaludes, M.D.A., L.S.D., mushrooms, mescaline, and heroin. He sometimes took barbiturates after cocaine use to allow him to sleep. At least four people had indicated to him that he had an alcohol and drug problem before he filled out the insurance application, and encouraged him to quit. He had attempted to quit using drugs himself several times, discontinuing drug use for six or seven weeks at a time.

In the course of its investigation, Golden Rule also discovered that Watson had visited Dr. Deporter several times, and that Valium had been prescribed for Watson's inability to sleep, his anxiety, and his alcohol craving.

Golden Rule denied Watson's claim, voided the insurance contract on the basis of his misrepresentations on the application, and refunded his premiums. Watson filed this action on November 26, 1987, alleging that Golden Rule should pay $10,000 of his medical bills pursuant to the policy. Golden Rule counter-claimed for rescission of the policy. The trial court granted Golden Rule's motion for summary judgment on both claims, and Watson appeals.

■ Our standard of review upon appeal from a summary judgment is well settled. We look to the record to determine whether there are genuine issues of material fact which would preclude the entry of judgment in favor of the movant, and whether the trial court correctly applied the law. *Mauller v. City of Columbus* (1990), Ind. App., 552 N.E.2d 500, 502, *transfer denied.* In doing so, we resolve all doubts and inferences in favor of the nonmovant. *Id.* We will affirm if the judgment is sustainable upon any theory supported by the record. *Schultz v. Hodus* (1989), Ind.App., 535 N.E.2d 1235, 1236, *rehearing denied.*

Watson first argues that the trial court incorrectly concluded that the terms of the insurance policy allowed Golden Rule to void the policy. He points to language on the front of the policy and the "pre-existing condition" provision of the policy which he claims, if construed in his favor, would prevent Golden Rule from voiding the policy.

Watson claims that the following language found on the front page of the policy is ambiguous, and should be construed in his favor:

Check the Attached Application:

Please read the copy of the application attached to your certificate. If it is not complete or has an error, please let us know immediately. An incorrect application may cause your coverage under the policy to be voided or a claim to be reduced or denied.

Pre–Existing Conditions:

Health conditions which exist prior to the effective date of a person's coverage and which are not fully disclosed to us are most likely not covered during the first 12 months of coverage. See the Pre–Existing Limitation provision in Section 7 for details.

Watson argues that these two paragraphs are ambiguous because they give conflicting messages to the insured regarding the consequences of an erroneous application. Since rules of insurance policy construction require the court to resolve all ambiguities in favor of the insured, he contends that the only reasonable construction of these clauses precludes Golden Rule from voiding the policy. Watson points out that questions seven through ten on the application asked about his medical history in the last ten years. Thus, he argues that those questions are covered by the "pre-existing condition" limitation, not the prior paragraph which speaks to the possibility of the insurance contract being voided for incorrect answers. Therefore, the "voided" option applies only to questions one through six on the application, which ask for name, age, marital status, dependents, address, height, weight, beneficiary, occupation, and weekly earnings. Accordingly, Watson argues that the trial court's judgment permitting Golden Rule to rescind the policy was an incorrect application of the law.

 An insurer may cancel a policy if representations in an application are (1) false; and (2) material to the risk involved. *Prudential Insurance Co. of America v. Winans* (1975), 263 Ind. 111, 325 N.E.2d 204, 206. The determination of whether the misrepresentation, intentional or innocent, is material is a question for the trier of fact unless the evidence is such that there can be no reasonable difference of opinion. *Id.* A representation is "material" if the fact omitted or misstated, if truly stated, might reasonably have influenced the insurer in deciding whether to reject or accept the risk or charge a higher premium. *Bush v. Washington National Ins. Co.* (1989), Ind.App., 534 N.E.2d 1139, 1142, *transfer denied.* Like any other contract, an insurance contract may be avoided by false representations which mislead, regardless of whether the representation was innocently made or made with a fraudulent intent. *Id.* Of course an insurer, by the terms of the policy which it has drafted, may further limit its ability to avoid the policy.

Section seven of the insurance policy provides in relevant part:

## PRE–EXISTING CONDITIONS

The Company will pay for Covered Expenses that:

(a) are incurred during the first 12 months of the Covered Person's insurance under the Policy; and

(b) result from a pre-existing condition that was:

(i) fully disclosed to the Company prior to the effective date of the Covered Person's insurance under the Policy; and

(ii) not excluded or limited by name or specific description.

Otherwise, loss due to pre-existing conditions will not be covered during the first 12 months after the effective date of the Covered Person's insurance under the Policy.

A "pre-existing condition" is a condition:

(1) for which the Covered Person received medical advice or treatment within the 24 months immediately preceding the date he or she became insured under the Policy; or

(2) which, in the opinion of a qualified physician:

(a) began prior to the date of the Covered Person's coverage under the Policy; and

(b) produced symptoms which would cause an ordinarily prudent person to

seek diagnosis or treatment within the 12 months immediately preceding the Covered Person's effective date of insurance under the Policy.

Record, p. 76. The "incontestability" provision of the policy provides in relevant part:

INCONTESTABILITY: No statement made by a Primary Insured relating to his or her insurability or that of his or her dependents will be used to void the insurance or deny a claim under the Policy unless: (a) it is contained in a written application signed by the Primary Insured; and (b) a copy of the application has been furnished to the Primary Insured, or to his or her beneficiary.

\* \* \* \* \* \*

Once a Covered Person has been continuously insured under the Policy for two years, no misstatement in the application for the Covered Person, except fraudulent misstatements, may be used to: (1) void the insurance; or (2) deny a claim. After the Covered Person has been insured for one year, however, the Company will not take this action unless the misstatement is discovered while processing a claim for a loss or disability that began during the Covered Person's first year of coverage.

Record, p. 80.

Golden Rule properly notes that the incontestability provision and the pre-existing condition provision refer to two separate actions which the insurer may take when an insured does not disclose a medical condition on his application. Under the pre-existing condition limitation, the insurer must provide coverage for non-excluded conditions fully disclosed in the application. Thus, the insurer may *deny coverage* for a condition not disclosed by the insured. There is no requirement of materiality, and the insurer may not avoid the policy.

If the misrepresentation is material, however, the insurer may avoid the policy if the insured does not fall within one of the exceptions contained in the incontestability clause.

■ Clearly, these clauses were drafted to cover different situations. Conceivably, a misrepresentation may be material, yet not relate to a pre-existing condition. Conversely, an omission of a pre-existing condition may not be material. Although it is possible for the nondisclosure of a pre-existing condition to be material, this does not automatically create an ambiguity. In such a situation, the insurer may deny coverage or avoid the policy at its election. Here, Golden Rule chose the latter.

Watson argues that Golden Rule failed to make a determination whether his alcoholism and addiction was a "pre-existing condition" as defined by the policy, and therefore the limitations in the pre-existing condition clause do not apply and Golden Rule was required to provide coverage. Watson's argument has no merit. In a deposition filed with Golden Rule's motion for summary judgment, a representative for Golden Rule testified that the pre-existing condition determination was not made because the insurer determined there was a material misrepresentation in the policy rendering it voidable. Thus, it was not necessary for Golden Rule to determine whether Watson had a pre-existing condition. Golden Rule was not denying coverage pursuant to the pre-existing condition clause; it was exercising its common law and contractual right to avoid the policy.

Watson next contends that the trial court improperly based its entry of summary judgment on disputed facts. He points to the following findings of the court:

(1) Plaintiff, Watson materially misrepresented his past medical history and denied any prior drug or alcohol problems when applying for coverage from Defendant, Golden Rule Insurance Company.

\* \* \* \* \* \*

(3) At worst Watson deliberately misled Golden Rule but at best Watson knew or should have known he had substance abuse problems, even absent any belief in his own addiction.

\* \* \* \* \* \*

(5) Watson's failure to disclose his pre-existing condition relieved Golden Rule of any obligation to cover related ex-

penses during the first twelve (12) months of coverage.

Record, pp. 289–290.

■ Neither finding three nor finding five was necessary to the trial court's judgment and therefore, even if they present an issue of fact, do not require reversal. Despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper where there is no dispute regarding facts which are dispositive of the matter. *Lee v. Schroeder* (1988), Ind.App., 529 N.E.2d 349, 352, *transfer denied.* Finding three, relating to Watson's actual or constructive knowledge of his substance abuse problems, is not relevant because even an innocent misrepresentation on an insurance application allows an insurer to avoid an insurance policy. *Bush, supra.* Watson's contention, supported by a doctor's affidavit, that he was experiencing the condition known as "denial" when he completed the application has no bearing on this result. If he was "not aware" of his condition when he completed the application, and Golden Rule was not notified of his condition, then the insurance policy was predicated upon a mutual mistake of fact. "Where both parties share a common assumption about a vital fact upon which they based their bargain, and that assumption is false, the transaction may be avoided if because of the mistake a quite different exchange of values occurs from the exchange of values contemplated by the parties." *Wilkin v. First Source Bank* (1990), Ind.App., 548 N.E.2d 170, 172. In such a case, rescission becomes the proper remedy. *Berry–Jefferson Corp. v. Gross* (1977), 171 Ind.App. 653, 358 N.E.2d 757.

Finding five, relating to pre-existing conditions, is not relevant because the judgment was not predicated upon that provision of the policy. It allowed avoidance of the policy, not merely denial of coverage. Avoidance of the policy was not an option under the pre-existing condition provisions of the policy. The court made explicit findings that Golden Rule relied on Watson's misrepresentations, was unaware of the risks which it was insuring, would not have underwritten Watson's risk but for the misrepresentations, and was therefore justified in avoiding the policy.

Thus the remaining issue is whether the trial court correctly found as a matter of law that Watson's misrepresentation was material. Normally, the materiality of a misrepresentation is a question of fact for the jury, but it may be determined as a matter of law if the evidence is such that there can be no reasonable difference of opinion. *Winans, supra.* Here, we find that there can be no reasonable difference of opinion that the omission of alcoholism and drug addiction from an application for health insurance could reasonably have influenced Golden Rule's determination whether to accept or reject the risk of insuring Watson. *Accord Hofmann v. John Hancock Mutual Life Ins. Co.* (D.Md.1975), 400 F.Supp. 827, 830 (misrepresentations about alcoholism are material as a matter of law). Golden Rule submitted an affidavit from its senior claims analyst indicating that Golden Rule would not have issued a policy of insurance to Watson had he disclosed his alcoholism and addictions on the application. No contrary evidence was introduced.

Watson finally argues that he is entitled to summary judgment pursuant to Indiana Rules of Procedure, Trial Rule 56(B). In light of our determination that the trial court correctly applied the law to the facts, we find it unnecessary to address this contention.

Affirmed.

RATLIFF, C.J., and GARRARD, J., concur.