Steven D. FRICKE and Cheryl Fricke, Appellant–Petitioner,

v.

Lynnette GRAY, Appellee–Respondent.

No. 49A02–9705–CV–281.

Court of Appeals of Indiana.

Feb. 16, 1999.

1028

James C. Spencer, Indianapolis, Indiana, Attorney for Appellant.

Peter A. Schroeder, Ellen White Quigley, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge

### STATEMENT OF THE CASE

Plaintiffs–Appellants Steven D. Fricke and Cheryl Fricke (the "Frickes") appeal a jury verdict against them and in favor of Defendant–Appellee Lynnette Gray ("Gray") in a legal malpractice action.

We affirm.

### ISSUES

The Frickes raise several issues for our review which we restate as:

I. Whether the trial court committed reversible error by admitting evidence of Steven Fricke's prior convictions.

II. Whether the trial court committed reversible error by admitting Steven Fricke's income tax returns.

III. Whether the trial court committed reversible error by refusing to give the Frickes' tendered instruction regarding ambiguity.

IV. Whether the trial court committed reversible error by denying the Frickes' motion for judgment on the evidence.

V. Whether the jury verdict was contrary to law.

Gray raises two issues which we restate as:

VI. Whether the trial court committed reversible error in excluding evidence of fraud.

VII. Whether the trial court committed reversible error by denying Gray's motion for judgment on the evidence.

### FACTS AND PROCEDURAL HISTORY

On January 17, 1992, the Frickes' house caught fire. The Frickes previously had obtained homeowners insurance coverage with Cincinnati Insurance Company ("Cincinnati"). On March 6, 1992, the Frickes filed a proof of loss under that policy with Cincinnati claiming $335,679.00 as the replacement value of the property they lost in the fire.

In June of 1992, Steven Fricke received a notice from Cincinnati that Cincinnati was going to deny the Frickes' claim. The Frickes contacted Gray to represent them against Cincinnati and paid a retainer fee totaling $1,500.00 in April of 1992. Gray filed a lawsuit in Johnson County on the Frickes' behalf on February 3, 1993. The case was moved to federal court and was dismissed because it was not filed within the limitation set by the policy. The home-owners policy stated that no suit could be commenced against Cincinnati after the one year anniversary of the loss.

The Frickes' filed a complaint against Gray, and her law partners, Tom G. Jones, and Russell A. Johnson, on December 6, 1994, alleging negligence and requesting damages for the failure to file the lawsuit on behalf of the Frickes within the one year limitation contained in the insurance policy. Tom G. Jones was dismissed from the lawsuit on December 30, 1996, and Russell A. Johnson was dismissed from the case by oral motion during the trial.

The trial began January 14th and ended January 17th, 1997, with the jury returning a verdict in favor of Gray. This appeal ensued. Additional facts will be provided below.

## DISCUSSION AND DECISION

### I. PRIOR CONVICTIONS EVIDENCE

■ The Frickes filed a Motion in Limine on January 10, 1997, requesting the exclusion of the following:

Any evidence concerning criminal convictions against the Plaintiffs that occurred more than ten (10) years prior to this date or before January 13, 1987.

(R. 82). The trial court denied that portion of the motion in limine.

At trial, the following transpired when defense counsel cross-examined Steven Fricke:

Mr. Fricke, you've been convicted twice of the possession of stolen property, is that correct?

*Mr. Pleasants:* Your Honor, I would have to object, I believe this is a violation of the Motion in Limine Order.

*Mr. Schroeder:* That Order was denied.

*The Court:* It's not in violation.

*Mr. Pleasants:* All right.

(R. 495). No other objection was made.

On appeal the Frickes make several arguments in support of their contention that reversible error occurred. They argue that 1.) Gray's counsel failed to lay a proper foundation for introduction of that evidence at trial, 2.) the trial court erred in denying the motion in limine as to the prior convictions, and 3.) Gray's counsel failed to comply with Ind. Evidence Rule 609's requirement of written notice of intent to use the evidence. Gray contends that those issues were not properly preserved for appeal because a different reason for the objection was argued at trial. We agree with Gray.

■ Our supreme court has held that an objection must be specific in order for the issue to be preserved for appellate review. *Willis v. State,* 510 N.E.2d 1354, 1357 (Ind. 1987), *cert. denied,* 484 U.S. 1015, 108 S.Ct. 721, 98 L.Ed.2d 670. Moreover, where, as here, the party states one reason for an objection at trial, he cannot rely upon another argument for the objection on appeal. *See, Palmer v. State,* 640 N.E.2d 415, 423 (Ind.Ct.App.1994).

■ We have held that in order to preserve error in the overruling of a pre-trial motion in limine the appealing party must object to the admission of the evidence at the time it is offered. *Id.* at 427. A motion in limine is not a final ruling on the admissibility of evidence, and a ruling on the motion does not preserve the error for appeal. *Id.*

Here, the objection made at trial was that the question violated the order in limine. The Frickes did not argue that an improper foundation had been laid, that the trial court erred in denying that portion of the motion in limine, or that Evid. R. 609's notice requirement had been violated. By failing to make those additional arguments made here on appeal, to the trial court, the Frickes have failed to preserve those arguments for our review.

## II. ADMISSION OF INCOME TAX RETURNS

■ Next, the Frickes challenge the admission into evidence of the Frickes' income tax returns. Gray's theory was that evidence of the Frickes' income helped to establish that they could not have sustained a loss worth $335,679.00. Exhibit G, the 1988 return, was admitted over a relevancy objection. Exhibits H, I, and J, the 1989, 1990, and 1991 returns respectively, were admitted over objections based upon relevancy and violation of a motion in limine.

In the January 10, 1997 motion in limine, the Frickes had requested the exclusion of any evidence concerning state and federal income tax returns. That portion of the motion in limine was denied.

As we have stated above, a motion in limine is not a final ruling on the admissibility of evidence and a ruling on the motion does not preserve the error for appeal. *Palmer,* 640 N.E.2d at 422. Appellant's objection at trial was that the motion in limine order had been violated. Our review of the record shows that the request to exclude income tax returns as evidence was denied. Therefore, the order was not violated. Moreover, no further objection was made to preserve the issue for appeal when the evidence was offered.

■ Appellant also objected on the ground that the income tax return evidence was irrelevant. We have held that such a general objection fails to preserve any error for appellate review. *See, Mills v. State,* 648 N.E.2d 1212, 1213 (Ind.Ct.App.1995). The trial court did not commit reversible error.

## III. TENDERED INSTRUCTION ON AMBIGUITY

The Frickes tendered instructions at trial, two of which, Instruction No. 6 and Instruction No. 10, were refused by the trial court and are the subject of this appeal. The Frickes claim that the trial court committed reversible error by refusing those instructions. Gray contends that this issue was not properly preserved for appeal. However, Gray contends, in the alternative, that even if the issue were properly preserved no error occurred.

Tendered Instruction No. 6 read as follows:

Where a contract is ambiguous, it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises. This rule of construction is one of last resort, applicable only where the language of the instrument will equally admit of [sic] either of two or more interpretations.

(R. 203).

Tendered Instruction No. 10 read as follows:

Contracts must be given such reasonable construction as will give effect, if possible, according to the parties' intention. Accordingly, a construction of a contract that is inequitable and gives an unfair or unreasonable advantage to one of the parties will be avoided. Thus, ambiguous contracts will be construed to avoid an unreasonable result.

(R. 207).

■ When reviewing a trial court's refusal to give an instruction, we consider whether the instruction is a correct statement of the law, whether there is evidence to support giving the instruction, and whether the substance of the instruction is covered by other instructions given by the court. *Snow v. State,* 560 N.E.2d 69, 72 (Ind.Ct.App.1990). The manner of instructing a jury lies within the sound discretion of the trial court, whose ruling will not be reversed unless the instruction error is such, taken as a whole, that the charge to the jury misstates the law or otherwise misleads the jury. *Reaves v. State,* 586 N.E.2d 847, 855 (Ind.1992).

In the present case, the Frickes requested that the trial court find the insurance contract to be ambiguous because of alleged inconsistent facts regarding the information provided in applying for the policy. Cincinnati indicated that it was denying coverage in part because of misrepresentations made on the application. On appeal, however, the Frickes argue that certain provisions of the policy are inconsistent, thereby rendering the policy ambiguous.

 The question of whether an insurance contract is ambiguous is one of law to be determined by the trial court. *Millspaugh v. Ross*, 645 N.E.2d 14, 16 (Ind.Ct. App.1994). Here, the trial court determined that there was no ambiguity in the policy itself. Therefore, there would be no evidence to support giving the instructions at issue. Further, the Frickes are attempting to make a different argument on appeal than that which was made before the trial court. The trial court did not err in failing to give the tendered instructions on the issue of ambiguity.

## IV. MOTION FOR JUDGMENT ON THE EVIDENCE

The Frickes moved for judgment on the evidence at the end of the trial. The Frickes contend that the trial court committed reversible error by denying that motion. Gray contends that the trial court did not err with respect to the Frickes' motion.

 Judgment on the evidence is available only where the evidence is unconflicting and susceptible to but one inference, supporting judgment for the movant. *Farm Bureau Insurance Company v. Crabtree*, 467 N.E.2d 1220, 1225 (Ind.Ct.App.1984). When deciding whether to grant a motion for judgment on the evidence and when reviewing such a determination, the evidence is viewed in a light most favorable to the non-movant. *Id.* If there is evidence on each element of the claim, the issue shall be tendered to the jury and the motion denied. *Id.*

This argument, however, has been waived by the Frickes. They have failed to cite to any authority in support of their argument. *See*, Ind. Appellate Rule 8.3(A)(7).

Gray argues that the trial court erred by denying her motion for judgment on the evidence which was made at the conclusion of the Frickes' case-in-chief. Gray contends that the trial court should have granted her motion because the evidence was without dispute that the Frickes made a false representation on their application, and that their failure to disclose the previous cancellation made the policy voidable as a matter of law.

 Gray cites to *Watson v. Golden Rule Insurance Company*, 564 N.E.2d 302 (Ind.Ct.App.1990) in support of her argument. While we find *Watson* to be helpful in resolving this argument, we do not agree with Gray's contention. In *Watson*, we held that an insurer may cancel a policy if representations in an application are (1) false; and (2) material to the risk involved. 564 N.E.2d at 304. The determination of whether the misrepresentation, intentional or innocent, is material is a question for the trier of fact unless the evidence is such that there can be no reasonable difference of opinion. *Id.* A representation is "material" if the fact omitted or misstated, if truly stated, might reasonably have influenced the insurer in deciding whether to reject or accept the risk or charge a higher premium. *Id.*

 Applying *Watson* and the standard of review for motions for judgment on the evidence to the facts of this case, we find that the trial court did not err in denying Gray's motion. The evidence about the application information was conflicting and not susceptible to but one inference in favor of Gray. *Watson* states that the determination of whether the misrepresentation is material is a question for the trier of fact unless there could be no reasonable difference of opinion regarding the evidence. *See Id.*

 In this case, Mr. Fricke testified that he was unaware of a previous cancellation of an insurance policy at the time he applied for insurance coverage with Cincinnati. Mrs. Fricke knew about the cancellation, but was not present when Mr. Fricke applied for insurance coverage with Cincinnati. A representative of Cincinnati testified that the failure to provide information on the application of previous cancellations would be misleading. The trial court did not err in allowing the matter to proceed to the trier of fact.

## V. JURY VERDICT

The Frickes contend that the jury verdict was contrary to law and should be set aside on appeal. They claim that because Gray admitted that she failed to file the lawsuit within the time limitation and because she conceded that the trial centered upon the

issue of whether the Frickes could have recovered against Cincinnati but for her failure to timely file the lawsuit, that the jury's verdict for the defendant is contrary to law.

■ The Frickes correctly state that in order for them to be successful upon appeal, they must establish that the judgment is contrary to law. *See, Beneficial Mortgage Co. of Indiana v. Powers*, 550 N.E.2d 793, 795 (Ind.Ct.App.1990), *reh'g denied*. Moreover, where the evidence is without conflict and can lead to but one conclusion and the trial court or jury has reached the opposite conclusion, the decision of the trial court or the verdict of the jury may be set aside upon appeal on the ground that it is contrary to law. *Schabler v. Indianapolis Morris Plan Corp.*, 142 Ind.App. 319, 234 N.E.2d 655, 657 (1968).

The Frickes argue that they should have been entitled to at least an award of damages in the amount of the retainer, $1,500, which was paid to Gray for representation. We note that the Frickes did not request a refund or award of the retainer amount in their malpractice complaint. Further, no instructions were tendered to the trial court or presented to the jury indicating that the Frickes were seeking a refund of the retainer amount. Evidence regarding the amount of work Gray performed on the Frickes' behalf was included in the complaint stating that Gray met with the Frickes and ultimately filed a complaint which was subsequently dismissed. There is no evidence concerning the value of those services.

■ Gray contends that the Frickes have waived this argument because they did not object to the trial court's jury verdict form, nor did they offer an alternative verdict form. We have held that challenges to verdict forms are waived by failing to make a timely objection to them and failing to submit alternative verdict forms. *Farm Bureau Insurance Co.*, 467 N.E.2d at 1226.

■ Notwithstanding the waiver arguments, the Frickes' argument fails. The evidence supports the jury's verdict. In order to prove a legal malpractice claim, a plaintiff-client must show (1) employment of an attorney (duty); (2) failure by the attorney to exercise ordinary skill and knowledge (breach); (3) proximate cause (causation) and; (4) loss to the plaintiff (damages). *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 344 (Ind.1991). To prove causation, the client must show that the outcome of the underlying litigation would have been more favorable but for the attorney's negligence. *Id.* This normally requires a trial within a trial. *Id.*

■ Gray does not dispute that there was an attorney-client relationship between her and the Frickes, nor does she dispute that the complaint was not filed within the one year limitation. The dispute centered around whether the Frickes' legal position was damaged causing them to suffer a loss, and if so, was the damage caused by Gray's negligence. The jury's verdict indicates that the jury did not believe that the Frickes would have been successful in their suit against Cincinnati; therefore, Gray's negligence did not cause them to suffer a loss. We do not find the jury's verdict to be contrary to law.

■ The Frickes' claim that they were entitled to a refund of the $1500 retainer is not totally without merit. However, we are not in a position to say that there was error below entitling them to relief here. We have held that an attorney who renders services for a client and is later sued by that client for malpractice is entitled to a deduction in the malpractice award, on the theory of quantum meruit, equal to the reasonable value of his or her services. *Schultheis v. Franke*, 658 N.E.2d 932, 941 (Ind.Ct.App.1995). We adopted this approach in part because it does not provide a windfall to the client, the attorney receives compensation for services which were done on behalf of the client, but the reduction is for the value of services which actually benefitted the client, not for the services found to be deficient. *Id.*

As we previously noted, there was no evidence presented at trial regarding the value of the services provided to the Frickes. The Frickes neither tendered instructions requesting a damage award in the amount of the full retainer or any part thereof, nor did they tender a verdict form which would have provided for an award of any amount beyond

that which they might have received from Cincinnati. These options were not before the jury. Therefore, there was no error below in failing to make that award.

## VI. EXCLUSION OF EVIDENCE OF FRAUD AND ARSON

Gray claims that the trial court erred in excluding evidence of fraud and arson. Gray contends that she had the right to present evidence which would have negated the Frickes' claim that her negligence was the proximate cause of their loss. The Frickes argued and the trial court ruled that arson and fraud were affirmative defenses in the legal malpractice lawsuit which needed to be pleaded pursuant to Ind. Trial Rule 8(C). The trial court ruled that since Gray had not pleaded those affirmative defenses, Gray was barred from introducing evidence supporting those defenses.

Gray asserts that it was error to rule that she needed to plead arson and fraud as affirmative defenses. Gray claims that those defenses were available to Cincinnati against the Frickes in the lawsuit over insurance coverage, but that the Frickes had the burden at trial in the malpractice action of proving their success against Cincinnati including overcoming those defenses.

We find the reasoning contained in the annotation by Susan L. Thomas, J.D., located in 10 A.L.R. 5th to be analogous and helpful here. The annotation reads as follows:

In many legal matters, the outcome depends to some degree on the team work and cooperation by the client and attorney, especially when the client is called upon to better the case by some affirmative act. Consequently, both the conduct of the client and of the attorney may affect the outcome, and, if the client suffers harm, the allocation of fault in an action for professional negligence. The same defenses may be raised in the legal malpractice context as in any other negligence action. The attorney may claim that a client's conduct is the sole cause of his or her harm, or raise the defense of contributory or comparative negligence. The contributory negligence of a client, as in other negligence cases, is a viable defense to a

legal malpractice action, and may preclude recovery where comparative negligence is not recognized or serve to reduce recovery in jurisdictions which do apply principles of comparative negligence. . . .

Susan J. Thomas, Annotation, *Legal Malpractice: Negligence or Fault of Client as Defense*, 10 A.L.R. 5th 828, 842–843, § 2[a] (1993).

▇▇▇ In legal malpractice actions, the attorney is in the position of arguing against the success of a claim the attorney had previously determined was worth pursuing. Here, Gray had to argue that the Frickes would have been unsuccessful in their lawsuit against Cincinnati. Therefore, in the legal malpractice action, Gray was standing in the shoes of Cincinnati. The defenses which were available to Cincinnati, fraud and arson, in the claim involving coverage under the insurance policy, then became Gray's defenses in the legal malpractice action involving her representation of the Frickes.

The trial court correctly determined that Gray had the burden of proving the affirmative defenses of fraud and arson. Therefore, Gray needed to comply with T.R. 8(C). The trial court did not err in excluding the evidence of fraud and arson because of Gray's non-compliance with T.R. 8(C). Moreover, even if the trial court had erred in excluding the evidence, the error would have been harmless in light of Gray's success at trial.

## CONCLUSION

The trial court did not err in admitting evidence of Steven Fricke's prior convictions and income tax returns. The trial court did not err in refusing to give the Frickes' tendered instructions regarding ambiguity. The trial court did not err in denying both motions for judgment on the evidence. The jury verdict was not contrary to law. The trial court did not commit reversible error in excluding the evidence of fraud and arson.

Judgment affirmed.

DARDEN, J., and STATON, J., concur.